UNITED STATES, Appellee,

v.

Private First Class Aaron P. GILCHRIST, United States Army, Appellant.

ARMY 20020342.

U.S. Army Court of Criminal Appeals.

29 Sept. 2005.

786

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Allyson G. Lambert, JA; Captain Robert E. Desmond, JA (on brief).

For Appellee: Colonel Steven T. Salata, JA; Lieutenant Colonel Mark L. Johnson, JA; Colonel Lawrence J. Schwarz, JA (on brief).

Before SCHENCK, Senior Judge, ZOLPER, and WALBURN, Appellate Military Judges.

## OPINION OF THE COURT

SCHENCK, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of going from his appointed place of duty, disrespect toward a superior noncommissioned officer, failure to obey a lawful order (three specifications), wrongful use of marijuana, Xanax,[1] and cocaine (one specification each), wrongful distribution of Xanax (two specifications), and larceny of other than military property (two specifications), in violation of Articles 86, 91, 92, 112a, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891, 892, 912a, and 921 [hereinafter

---

1. Xanax® is the registered trade name for the drug alprazolam, a Schedule IV controlled substance, of the benzodiazepine drug class, used to treat "Generalized Anxiety Disorder (GAD)" and "panic disorder." Internet Mental Health, Alprazolam, Brand Name: Xanax, *at* http://www.mentalhealth.com/drug/p30–x01.-html; *see* 21 C.F.R. 1308.14(c)(1).

UCMJ]. The military judge convicted appellant, contrary to his plea,[2] of failure to obey a lawful order, in violation of Article 92, UCMJ. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for fifteen months, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority ordered 176 days of confinement credit.[3] This case is before the court for review under Article 66, UCMJ.

Appellant's record of trial is fraught with issues; several merit discussion and relief. First, we agree with appellate government counsel that appellant's court-martial had jurisdiction. Second, we agree with appellate defense counsel that Specifications 1 and 2 of Charge III, both alleging larceny on 21 July 2001, should be merged because appellant stole the property listed in these specifications at substantially the same place and time. Third, we hold that the record of trial raises a substantial, unresolved question of law and fact as to the providence of appellant's guilty plea to the Specification of Additional Charge I and Additional Charge I (going from his appointed place of duty). Fourth, we find the record of trial lacks sufficient evidence to convict appellant of Specification 3 of Additional Charge III (failure to obey a lawful order). Finally, we agree, in part, with appellant's personal averment that shackling him to a barracks room cot—when he was a pretrial prisoner and the detention cell was unavailable—was more rigorous than required and constituted a violation of Article 13, UCMJ. Based on the errors noted, we will grant appropriate relief and reassess the sentence in our decretal paragraph.

## I. Jurisdiction

### Facts

Appellate defense counsel assert the record of trial lacks evidence that Colonel (COL) Wallace B. Hobson, Jr. (the acting commander)[4] personally selected appellant's court members prior to referring the case to a general court-martial. The 1 March 2002 pretrial advice for appellant's case states, "I recommend that you refer the original and additional charges to trial by general court-martial by the members listed in Court–Martial Convening Order Number [CMCO # ] 3, this headquarters, dated 10 December 2001." Colonel Hobson's endorsement to the pretrial advice on that same date states, "All recommendations of the Staff Judge Advocate are approved." Court–Martial Convening Order Number 3 is listed as an enclosure to the pretrial advice.

At trial, defense counsel was put on notice that Major General (MG) Green selected the members for appellant's court-martial; copies of that order were furnished to "counsel

2. Although the military judge found appellant's plea of guilty to Specification 3 of Additional Charge III improvident, neither appellant nor the military judge entered a plea of not guilty for this specification. *See* UCMJ art. 45(a) (stating "a plea of not guilty shall be entered in the record" after guilty plea is found improvident). It is apparent from the record that the court-martial proceeded as if a not guilty plea had been entered. *See* Section IV, *infra.*

3. Appellant contends that the military judge erred in calculating the number of days appellant spent in pretrial confinement. The government concedes this issue, and we will order one additional day of credit, pursuant to *United States v. Allen,* 17 M.J. 126 (C.M.A.1984), in our decretal paragraph.

4. Colonel Hobson's assumption of command orders are properly included in the record of trial. Although COL Hobson was the acting commander, he is considered a successor in command. "It is well established in military law that the power to convene courts-martial[, and to refer cases to them,] 'is to the office, and not to the particular person who occupies the office at the time of the grant.'" *United States v. Brown,* 39 M.J. 114, 117 (C.M.A.1994) (quoting *United States v. Bunting,* 4 U.S.C.M.A. 84, 87, 15 C.M.R. 84, 87, 1954 WL 2255 (1954)); *see* Rule for Courts–Martial [hereinafter R.C.M.] 103(6) ("'Convening authority' includes a commissioned officer in command for the time being[, i.e., an acting commander,] and successors in command," i.e., a commander who has permanently assumed the command function of his predecessor); R.C.M. 601(b) ("Any convening authority may refer charges to a court-martial convened by that convening authority or a predecessor, unless the power to do so has been withheld by superior competent authority."). The same principles also apply to post-trial matters. *See* UCMJ art. 60(c)(1) ("[A] commissioned officer commanding for the time being, a successor in command, or any person exercising general court-martial jurisdiction may act under this section in place of the convening authority.").

and the accused." Colonel Hobson referred appellant's case to the panel MG Green previously selected. In the presence of trial defense counsel, the military judge twice clarified that COL Hobson was the acting convening authority. Trial defense counsel affirmatively agreed. Court–Martial Convening Order Number 3 convenes a general court-martial with the members listed therein, "BY COMMAND OF MAJOR GENERAL GREEN." *See* R.C.M. 504(a). On appellant's charge sheet and additional charge sheet, block 14 states, "Referred for trial to the general court-martial convened by CMCO # 3, dated 10 December 2001, subject to the following instructions: to be tried in conjunction with the [other] charges. By ORDER of COLONEL HOBSON." Trial defense counsel did not challenge COL Hobson's personal selection of the members on CMCO # 3, nor did he otherwise express any concern about CMCO # 3 or jurisdiction.

### Discussion

■ A convening authority may adopt court members selected by his or her predecessor in command. *See* R.C.M. 601(b); *United States v. England*, 24 M.J. 816, 817 (A.C.M.R.1987); *see also United States v. Allgood*, 41 M.J. 492, 496 (C.A.A.F.1995) (citing with approval this court's opinion in *England, supra*). As in *England*, the referral language in the instant case cited a specific convening order listing members appointed by COL Hobson's predecessor in command. "We presume regularity in the action of the convening authority." *United States v. Hudson*, 27 M.J. 734, 735 (A.C.M.R.1988) (citing *United States v. Hodge*, 26 M.J. 596 (A.C.M.R.1988); *United States v. Cunningham*, 21 M.J. 585 (A.C.M.R.1985); and *United States v. Carman*, 19 M.J. 932 (A.C.M.R. 1985)). This court is satisfied that COL Hobson referred appellant's case to a general court-martial after reviewing and approving CMCO # 3 incident to consulting with his staff judge advocate. Moreover, appellate defense counsel do not provide any support for their assertion that COL Hobson did not adopt the court members listed on CMCO # 3.

■ We also find the decision of our sister court in *United States v. Brewick*, 47 M.J. 730 (N.M.Ct.Crim.App.1997), persuasive. Our sister court found a similar claim of lack of personal selection of court members to be without merit because Lance Corporal Brewick did not raise the issue at trial and failed to show prejudice on appeal. Furthermore, we agree with the *Brewick* court's view that *Allgood* does not require an "explicit statement of adoption." *Brewick*, 47 M.J. at 732. Absent evidence to the contrary, adoption can be presumed from the convening authority's action in sending the charges to a court-martial whose members were selected by a predecessor in command. *See id.* at 733. We are satisfied that "the trial counsel's 'averments of jurisdiction', included in the record without objection, are adequate to establish the proper constitution and jurisdiction of the court." *United States v. Vargas*, 47 M.J. 552, 554 (N.M.Ct.Crim.App.1997) (citing *Runkle v. United States*, 122 U.S. 543, 556, 22 Ct.Cl. 487, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887)). Therefore, we find that appellant's court-martial had jurisdiction to try him on the referred charges.

## II. Multiple Article Larceny

### Facts

Appellant pleaded guilty to larceny of $60.00 cash and Xanax pills of a value of about $20.00 from Private (PVT) Richard Rasch on 21 July 2001 (Specifications 1 and 2 of Charge III, respectively). During the plea inquiry, appellant told the military judge that the day PVT Rasch went absent without leave (AWOL), appellant and PVT Hill entered PVT Rasch's room and stole "a baggie with the pills in it and some money" from a jewelry box. Thereafter, they divided the money and pills. After pleas but before findings, the military judge reduced the value alleged in Specification 1 to $30.00. He then found appellant guilty of modified Specification 1, and Specification 2 as charged. Trial defense counsel did not request merger of these two specifications based either on unreasonable multiplication of charges or multiplicity. The pretrial agreement did not include a provision waiving all waivable motions.

## Discussion

■ Appellate defense counsel now assert Specifications 1 and 2 of Charge III constitute an unreasonable multiplication of charges and urge us to consolidate these specifications. Appellate government counsel respond that this is an issue of multiplicity that was waived by appellant's plea of guilty, absent plain error. The government argues in its brief that appellant has failed to meet "the burden of establishing that there was plain or obvious error that 'materially prejudiced' his 'substantial rights.'" The government admits, however, "the items stolen were taken at the same place and time" and "should have been charged in one specification." We agree with appellate defense counsel.

■ The charges in appellant's case represent an unreasonable multiplication.[5] "When a larceny of several articles is committed at substantially the same time and place, it is a single larceny even though the articles belong to different persons. Thus, if a thief ... goes into a room and takes property belonging to various persons, there is but one larceny ...." *Manual for Courts–Martial, United States* (2000 ed.) [hereinafter *MCM*], Part IV, para. 46c(1)(h)(ii);[6] *see United States v. Martin*, 36 M.J. 315, 316 (C.M.A.1993) (improper to separately charge contemporaneous taking of money from automatic teller machine (ATM) and ATM card

found within); *United States v. Orr*, 20 M.J. 139 (C.M.A.1985) (summary disposition)[7] (improper to separately charge three different larcenies that occurred contemporaneously during single housebreaking); *United States v. Huggins*, 17 M.J. 345 (C.M.A.1984) (summary disposition) (improper to separately charge takings that occurred as part of one transaction); *United States v. Coffman*, 45 M.J. 669, 671 (Army Ct.Crim.App.1997) (affirming consolidation of separate larceny specifications involving theft of a wallet and theft of a military identification card contained within). We will therefore merge the two larceny specifications into one specification in our decretal paragraph.[8]

## III. Improvident Plea

### Facts

Appellant pleaded guilty to, and was found guilty of, the Specification of Additional Charge I, going from his appointed place of duty, "a doctor's appointment at William Beaumont Army Medical Center [WBAMC]," on or about 3 October 2001, in violation of Article 86(2), UCMJ. Appellant now asserts his plea to this specification was improvident. We agree.

The stipulation of fact states appellant informed his chain of command he had a doctor's appointment at WBAMC at 0900 on 3 October 2001. Drill Sergeant Yates drove

---

5. Specifications are multiplicious as a matter of law when they are "'facially duplicative,' that is, factually the same." *United States v. Britton*, 47 M.J. 195, 198 (C.A.A.F.1997) (quoting *United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F.1997)). Multiplicity issues are waived if not raised at trial unless an appellant can show plain error, i.e., facial duplicity. *See United States v. Hudson*, 59 M.J. 357, 358–59 (C.A.A.F.2004); *United States v. Heryford*, 52 M.J. 265, 266 (C.A.A.F.2000). Specifications 1 and 2 of Charge III, are not facially duplicative. The government was required to prove appellant stole different items for each specification. In contrast, specifications constitute an unreasonable multiplication of charges as a matter of policy when, for example, what is substantially one transaction is unreasonably broken down into its component parts and charged separately. *See* R.C.M. 307(c)(4) discussion; *United States v. Quiroz*, 55 M.J. 334, 336–38 (C.A.A.F.2001) (stating that appearance of this language in nonbinding discussion does not grant "imaginative prosecutors [license] to multi-

ply charges without limit"); *cf. United States v. Finlayson*, 58 M.J. 824, 828 (Army Ct.Crim.App. 2003) ("An accuser should not unreasonably multiply the charges arising out of a single criminal combination.").

6. This provision is unchanged in the *MCM*, 2002 and 2005 editions.

7. In *United States v. Diaz*, 40 M.J. 335, 339–40 (C.M.A.1994), our superior court stated that summary dispositions may be cited as authority.

8. Although this issue was considered for the first time on appeal, this court may "consider all claims of unreasonable multiplication of charges, even if raised for the first time on appeal, and ... consider waiver [or forfeiture] only 'if an accused affirmatively, knowingly, and voluntarily relinquishes the issue at trial.'" *Quiroz*, 55 M.J. at 338 (quoting *United States v. Quiroz*, 53 M.J. 600, 606 (N.M.Ct.Crim.App.2000)); *see* UCMJ art. 66.

appellant to the hospital for this appointment, but subsequently "spotted [appellant] running ... to a convenience store located across the street" from the hospital.

During the *Care*[9] inquiry, the military judge described the elements for leaving a place of duty, Article 86(2), UCMJ, as follows:

> One, that a medical authority appointed a certain time and place of duty for you, that is, a 0900 hours doctor's appointment at [WBMAC];
>
> Two, that you knew you were required to be present at this appointed time and place of duty; and
>
> Three, that on or about 3 October 2001, you, without proper authority, went from the appointed place of duty after having reported at such place.

Appellant agreed that the elements correctly described what he did. He further told the military judge:

> I had an appointment with physical therapy after lunch at the hospital, but the drill sergeants were going to be running around all day, so they'd have to bring me to the hospital early. So they brought me to the hospital around 0900. I would've had to wait around, so myself and [PVT] Kelso walked across the street to the store. As we were walking out, Drill Sergeant Yates told us to get back in the van and he brought us back to post and I missed my appointment.

The following colloquy then ensued:

> MJ: When they dropped you off, what did the drill sergeants tell you, if anything?
>
> ACC: "Call me when you get done with your appointment," Your Honor.
>
> MJ: Did they tell you you couldn't leave the hospital?
>
> ACC: No, Your Honor.
>
> MJ: You're certain that the time of the appointment was 1300, not 0900?
>
> ACC: I'm positive, Your Honor.

The military judge, without objection from the parties, amended the time of appellant's doctor's appointment in the stipulation of fact from "0900" to "1300." However, he changed only one of the two references to "0900." Appellant also told the military judge that after Drill Sergeant Yates dropped them off at "around 0845," he and PVT Kelso left the hospital to go to the 7–Eleven convenience store across the street. Appellant indicated that food or other items were not available in the hospital "for another hour or so." When the military judge asked appellant if he thought he was to remain in the hospital until his appointment, appellant said, "I suppose, Your Honor—I wasn't real sure." The military judge then asked appellant, "Is it fair to say that your place of duty was the hospital until your appointment?" and "You were just trying to kill some time, is that right?" Appellant affirmatively answered, "Yes," and subsequently agreed that no one gave him permission to leave the hospital.

At the end of the plea inquiry, appellant again agreed with the military judge that "a medical authority appointed a certain time and place of duty for [appellant], that is, [a] 1300 hours doctor's appointment at [WBAMC]," that he knew he was required to be at "[that] appointed time and place of duty," and on 3 October 2001, he, "without proper authority, went from the appointed place of duty after having reported to such place."

### Discussion

■ We review a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F.1996) (citations omitted). We will not overturn a military judge's acceptance of a guilty plea unless the record of trial shows a substantial basis in law and fact for questioning it. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991).

■ A providence inquiry into a guilty plea must establish that the accused believes and admits he is guilty of the offense and that the factual circumstances admitted by the accused objectively support the guilty plea. *United States v. Garcia*, 44 M.J. 496, 497–98 (C.A.A.F.1996) (citing *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A.1994); *United States v. Davenport*, 9 M.J. 364, 367

---

**9.** *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969).

(C.M.A.1980); and R.C.M. 910(e)). Should the accused set up a matter inconsistent with the plea at any time during the proceeding, "the military judge must either resolve the apparent inconsistency or reject the guilty plea." *Garcia*, 44 M.J. at 498 (citing UCMJ art. 45(a) and R.C.M. 910(h)(2)); *see also Davenport*, 9 M.J. at 367 (stating same). Furthermore, when such inconsistent matters "reasonably raise[ ] the question of a defense ... it [is] incumbent upon the military judge to make a more searching inquiry to determine the accused's position on the apparent inconsistency with his plea of guilty." *United States v. Timmins*, 21 U.S.C.M.A. 475, 479, 45 C.M.R. 249, 253, 1972 WL 14168 (1972).

"Mere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea." *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F.1996) (citing *United States v. Terry*, 21 U.S.C.M.A. 442, 45 C.M.R. 216, 1972 WL 14158 (1972)). In determining whether the providence inquiry provides facts inconsistent with the guilty plea, we take the accused's version of the facts "at face value." *United States v. Jemmings*, 1 M.J. 414, 418 (C.M.A.1976).

■ Appellant's providence inquiry does not provide an adequate factual basis to meet the requirements of *Care*, Article 45(a), UCMJ, and R.C.M. 910(e). *See United States v. Jordan*, 57 M.J. 236, 238–39 (C.A.A.F.2002). Unlike Article 86(1), UCMJ, (failure to go to an appointed place of duty), Article 86(2), UCMJ, (going from an appointed place of duty), requires a soldier *to report* at the "certain time and place," then depart from that place of duty. The Specification of Additional Charge I, as alleged on the charge sheet, does not reflect a specific time, but only states "a doctor's appointment at

[WBAMC]." Based upon appellant's assertions during the plea inquiry, the military judge twice advised, and appellant agreed, that his time and place of duty was a 1300 doctor's appointment at the hospital. Therefore, the time agreed to by the parties and reinforced by the military judge's description of the elements, established appellant's "certain time" of duty as 1300.

Appellant did not admit he was required to be at the hospital at 0845 when he was dropped off. Appellant merely agreed that a "medical authority" required him to be present for his 1300 doctor's appointment at WBAMC. Appellant's statements during the providence inquiry indicate he did not understand he was reporting to his place of duty, a 1300 doctor's appointment at WBAMC, when he arrived over four hours early. Furthermore, appellant's responses to the military judge's questions regarding his departure from the hospital set up matters inconsistent with his guilty plea.[10] Therefore, we hold that the record of trial raises a substantial, unresolved question of law and fact as to the providence of appellant's guilty plea to a violation of Article 86(2), UCMJ. *See Jordan*, 57 M.J. at 238; *Prater*, 32 M.J. at 436. We will set aside and dismiss this specification in our decretal paragraph.

## IV. Trial on the Merits

### *Facts*

Appellant pleaded guilty to Specifications 1 and 3 of Additional Charge III, failure to obey a lawful order by consuming alcohol in violation of Policy Letter 1–7 by Headquarters, 1–56 Air Defense Artillery Regiment, Subject: Alcohol and Tobacco Policy (13 July 1999) [hereinafter Policy Letter 1–7], para. 4c,[11] on or about 17 August 2001 and 14 July

---

10. *See Davenport*, 9 M.J. at 367. The military judge, with the agreement of the parties, could have amended the specification to reflect an offense under Article 86(1), UCMJ (failure to go to his appointed place of duty). *See, e.g., United States v. Cooper-Tyson*, 37 M.J. 481, 482 (C.M.A. 1993) (finding accused provident to drug-use offense where plea was to drug and time period different than those charged); *United States v. Epps*, 25 M.J. 319, 323 (C.M.A.1987) (comparing the nature of the offense referred to trial with the nature of the offense to which accused admitted guilt during plea inquiry). However, appellant

indicated that he did not know if he could depart the hospital and further indicated that a superior noncommissioned officer told him to depart the hospital. To find appellant provident to such a specification required amending the specification and resolving potential defenses such as impossibility and the superseding lawful order.

11. Policy Letter 1–7, para. 4c, prohibits initial entry trainees (IET) "from drinking or possessing alcoholic beverages at any time while assigned to 1–56 ADA ... regardless of age."

2001, respectively. Policy Letter 1–7 was attached to the stipulation of fact and, during the plea inquiry, the military judge took judicial notice of this policy letter without defense objection. During the plea inquiry, appellant admitted that on 14 July 2001 and 17 August 2001, he was an IET student subject to the alcohol prohibition and had a duty to obey the "no alcohol policy." However, appellant indicated he had no knowledge of this policy at the time he violated the order, and further stated that he never read the policy. The military judge subsequently responded:

> Counsel, based on the statements of the accused, I have two problems and two concerns. First, he's admitted under oath that he had full knowledge of the order on the 14th of July and the 17th of August, and he's just told me that he didn't have knowledge of the order. He was told he was supposed to read it, but didn't have knowledge. Second of all, he can't be provident to Specifications 1 and 3 of Additional Charge III. I don't think that that can be cured.

> I'll continue on with the providence inquiry, and then give you a chance to tell me what you want me to do.

Later in the plea inquiry, the military judge stated, "Counsel, before I go through one more time on the elements, I believe the offenses that were problematic—Specifications 1 and 3 of Additional Charge III, I don't believe the accused can be provident to those." Trial counsel responded:

> With regards to Specification 1 of [Additional] Charge III, the date alleged there is the 17th of August, which is after the 14 July 2001—the accused did state that upon getting in trouble for violating the alcohol policy, he was instructed to read the battalion memorandum, the battalion orders.

The government doesn't feel that he is improvident on that charge, because it was his duty and responsibility to know those orders after being advised that those orders did exist.

Trial defense counsel agreed. The military judge again discussed appellant's knowledge of the policy, and appellant admitted that after the 14 July incident he was aware of the alcohol prohibition. After a R.C.M. 802 conference with the parties, the following colloquy ensued:

> MJ: That leaves us with ... Specification—I believe it is—1 [sic] of Additional Charge III, that I indicated that based on the responses of the accused, I was having difficulty—I would've had difficulty finding him provident as to those specifications.

> Government, where are we at?

> TC: Your Honor, in accordance with the understanding of the 802 session, the government will not offer any evidence on any of the charges to which the accused has pled not guilty. However, we do intend to offer evidence regarding Specification 3 of Additional Charge III....

> MJ: Does that—Captain Weiss, do you agree that's the gist of what we discussed in the 802 session?

> DC: Yes, Your Honor.

The military judge subsequently discussed appellant's pretrial agreement with appellant. The military judge told appellant, "you agree to plead guilty as your counsel has indicated, and I've already informed you that I did not find you to be provident to Specification 3 ... of Additional Charge III. Did you understand what you'd be required to plead guilty to at the time you signed this agreement?" [12] Appellant stated, "Yes, Your Honor."

---

12. The military judge properly addressed whether appellant and the government agreed to be bound by the pretrial agreement. However, as part of the pretrial agreement, appellant waived his right to an Article 32, UCMJ, hearing on the additional charges. Appellant's waiver was conditional, "subject to the acceptance of [his] offer to plea[d] ... and acceptance of [his] subsequent guilty plea by the Court." The military judge asked appellant, "Your understanding was that this was a conditional waiver, and that if I didn't accept your guilty plea, you would still have the right to an Article 32 investigation for the additional charges, is that right?" Appellant personally agreed. See R.C.M. 405(k) ("The accused may waive an [Article 32] investigation under this rule."); United States v. Garcia, 59 M.J. 447, 451 (C.A.A.F.2004) ("[T]he decision whether to waive a pretrial investigation is unlike the many routine decisions a lawyer must make as the trial progresses. It is, rather, a decision fundamentally impacting a 'substantial [and personal] pretrial right' of the accused."). Although the military

Despite having twice informed appellant he found his plea of guilty to Specification 3 of Additional Charge III improvident,[13] the military judge failed to enter a plea of not guilty to that specification or give appellant the opportunity to do so. The military judge then asked if the government intended to "prove up Specification 3 of Additional Charge III." Trial counsel responded affirmatively. The military judge stated, "With that in mind, I propose that we delete paragraph six on page two of the stipulation of fact, since the accused can't be provident along those lines." With the agreement of the parties, he did so. There was no discussion regarding Policy Letter 1–7 that was attached to the stipulation of fact or of the fact that, as part of the plea inquiry, the military judge took judicial notice of the policy.[14]

The government subsequently called only one witness, First Sergeant (1SG) Thompson, to prove appellant violated the "no alcohol policy" on 14 July 2001 (Specification 3 of Additional Charge III). First Sergeant Thompson's testimony only addressed appellant's knowledge of the policy and status as an IET soldier. During 1SG Thompson's cross-examination, trial defense counsel alluded to "the incident at [PVT] Nalos' house" on 14 July 2001, but no evidence was presented regarding how appellant violated the policy. First Sergeant Thompson's testimony was the only evidence presented on the merits; the defense did not present any evidence. During argument on findings, trial defense counsel reminded the military judge that "during [the] providence inquiry" he "heard [appellant's] testimony" regarding knowledge of the order. Thereafter, the military judge found appellant guilty of Specification 3 of Additional Charge III.

### Discussion

Article 66(c), UCMJ, imposes upon this court the duty to affirm only those findings

of guilty we find correct in law and fact. We must conduct an independent review of both the legal and factual sufficiency of the evidence. In doing so, our court reviews de novo the legal and factual sufficiency of the case. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.2002).

The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, a rational fact finder could have found all the essential elements of the offense beyond a reasonable doubt. *United States v. Brooks*, 60 M.J. 495, 497 (C.A.A.F.2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). When applying this test, we are bound to draw every reasonable inference from the record in favor of the prosecution. *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991). The test for factual sufficiency is whether, after weighing the evidence of record and making allowances for not having personally observed the witnesses, we are convinced of appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In sum, to sustain appellant's conviction, we must find that the government has proven all essential elements and, taken together as a whole, the parcels of proof credibly and coherently demonstrate that appellant is guilty beyond a reasonable doubt. *See United States v. Roukis*, 60 M.J. 925, 930 (Army Ct.Crim.App.2005), *aff'd*, 2005 CAAF LEXIS 1009 (C.A.A.F. 9 Sept. 2005) (decision without published opinion).

Article 92(2), UCMJ, provides, "Any person subject to this chapter who ... having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order ... shall be punished as a court-martial may direct." This offense has four elements:

**13.** The military judge informed appellant of his improvident finding when he began to review the terms of appellant's pretrial agreement, and again after hearing testimonial evidence on the merits of the specification. *See* note 2, *supra*.

**14.** *See* note 16, *infra*.

judge did not accept appellant's plea to all specifications of the additional charges, he failed to ask appellant whether he still waived his Article 32 hearing concerning Specification 3 of Additional Charge III. We need not address this error because we will dismiss the only specification of the additional charges of which the military judge found appellant guilty after trial on the merits.

(a) That a member of the armed forces issued a certain lawful order;

(b) That the accused had knowledge of the order;

(c) That the accused had a duty to obey the order; and

(d) That the accused failed to obey the order.

*MCM,* Part IV, para. 16b(2).[15] Furthermore, "to be guilty of this offense, a person must have had actual knowledge of the order or regulation. Knowledge of the order may be proved by circumstantial evidence." *Id.* at para. 16c(2)(b).

▋ Article 45(a), UCMJ, requires that, "If an accused ... after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently ... a plea of not guilty shall be entered in the record, and the court shall proceed as though he has pleaded not guilty." Additionally, the government generally may not use statements made during plea discussions when a plea of guilty is later withdrawn. *See* Military Rules of Evidence [hereinafter Mil. R. Evid.] 410(a)(1) and (3); *United States v. Heirs,* 29 M.J. 68, 69 (C.M.A.1989) ("[A]ny statement made by an accused during a providence hearing incident to a tendered plea of guilty is inadmissible if the plea is withdrawn. By implication the same is required if the plea is not accepted by the military judge."); *United States v. Shackelford,* 2 M.J. 17 (C.M.A.1976) (implying violation of Article 45(a) where evidence from rejected plea inquiry used to convict or impeach accused); *United States v. Wahnon,* 1 M.J. 144, 145 (C.M.A.1975) (stating guilty plea to one charge may not be used as evidence to establish separate charge to which

plea of not guilty was entered); *United States v. Caszatt,* 11 U.S.C.M.A. 705, 707, 29 C.M.R. 521, 523, 1960 WL 4549 (1960) (stating guilty plea may "be used to establish facts and elements *common* to both the greater and lesser offense within the same specification") (emphasis added); *United States v. Ramelb,* 44 M.J. 625, 628–29 (Army Ct.Crim.App.1996) (quoting *United States v. Dorrell,* 18 C.M.R. 424, 425, 1954 WL 2742 (N.B.R.1954)) ("It is long-settled judicial policy that while a plea of guilty constitutes a judicial confession of guilt to a particular offense and is considered the strongest proof of guilt under the law, such plea 'admits *only* what has been charged and pleaded to.' ... [I]t may not be used to prove a separate offense.").

▋ In appellant's case, the military judge apparently found appellant's plea of guilty to Specification 3 of Additional Charge III improvident, but did not ensure a plea of not guilty was entered in the record. *See* UCMJ art. 45(a). More important, without including the evidence obtained during the plea inquiry, the elements of failure to obey a lawful order are not met. The government presented no evidence on the merits as to how, when, or where appellant violated the order. The military judge properly deleted paragraph six in the stipulation of fact pertaining to Specification 3 of Additional Charge III.[16] However, the stipulation of fact and the statements appellant made during the plea inquiry constitute the only evidence in the record explaining appellant's failure to obey Policy Letter 1–7.

Appellant does not now assert that the military judge improperly considered his statements made during the plea inquiry.[17]

---

15. This provision is unchanged in the *MCM,* 2002 and 2005 editions.

16. *See United States v. Romero,* 37 M.J. 613 (A.C.M.R.1993) (finding stipulation of fact entered pursuant to a plea agreement must be withdrawn after military judge rejects pleas of guilty, unless accused affirmatively consents to its use on record); *United States v. Cunningham,* 36 M.J. 1011 (A.C.M.R.1993) (finding after government withdrawal from plea agreement, stipulation of fact improperly used to support plea inquiry on some offenses and to determine appropriate sentence without accused's consent).

The parties never discussed the admissibility (on the merits) of Policy Letter 1–7 that was attached to the stipulation of fact and of which the military judge took judicial notice during the plea inquiry. Because of our finding of insufficient evidence as to the contested specification, we need not address whether the military judge could have properly considered the policy letter during trial on the merits.

17. The military judge informed appellant that statements made during the plea inquiry could be used against appellant in the sentencing portion of the trial. This limited "knowing and

We will presume the military judge knew and understood the limitations of Mil. R. Evid. 410(a)(1) and (3). *See United States v. Rodriguez,* 60 M.J. 87, 90 (C.A.A.F.2004) (citing *United States v. Mason,* 45 M.J. 483, 484 (C.A.A.F.1997)) ("Military judges are presumed to know the law and to follow it absent clear evidence to the contrary."); *United States v. Prevatte,* 40 M.J. 396, 398 (C.M.A.1994) (stating military judge is presumed to know rules of evidence and to consider evidence only for permissible purposes).

Nevertheless, after reviewing the testimony and applying the above tests for both legal and factual sufficiency, we find the evidence admitted during trial on the merits is legally and factually insufficient to sustain the finding of guilty to failure to obey the "no alcohol policy." Accordingly, we will set aside and dismiss Specification 3 of Additional Charge III and reassess the sentence in our decretal paragraph.

## V. Article 13, UCMJ

### *Facts*

Pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), appellant asserts that "he should have received Article 13 credit for being shackled to a cot [for eight hours] in 'The Ice House.'" Appellate government counsel respond without elaboration that the issues submitted under *Grostefon, supra,* lack merit.

Trial defense counsel made a motion for appropriate relief requesting credit for violations of Article 13, UCMJ. He requested credit for incidents involving the first sergeant calling appellant names, transporting appellant while shackled and in an improperly adorned uniform (without name tag and

rank), and for appellant's "left arm and right leg [being] shackled to a cot" while being held overnight in the barracks as a pretrial confinement prisoner.

We adopt the following findings of fact made by the military judge:

> On or about 16 January 2002, the accused was transported back to Fort Bliss from Fort Knox for the Article 32 investigation relating to the additional charges in this case. Because the Provost Marshal [detention] cell was full, the accused was placed in a utility room on the first floor of his barracks. The room was called the Ice House because an ice-making machine was housed inside the room. It was well known to those in the unit. The room also contained a metal cot, several tables, as well as barracks maintenance equipment. There is no latrine in the room. The [charge of quarters (CQ)] desk was located 10–20 feet away from the door to the room. The duty drill sergeant's office was located another 10 feet from the CQ desk.

The military judge also found that appellant arrived between 2200 and 2300, was "secured with leg irons to one of the legs of the cot," [18] and that SFC Wyatt "had to wake [appellant] in the morning at approximately 0630." Sergeant First Class Wyatt, PVT MacMahan, and two CQ runners were in "close proximity to the room [appellant] was billeted in throughout the evening." Sergeant First Class Wyatt and PVT MacMahan also checked on appellant on several occasions "during the course of the evening." [19] The utility room door remained "open throughout the night" except between 0430 and 0730 on 17 January when soldiers were performing physical training. During that time, appellant testified that no one could

---

intelligent" waiver of his privilege against self-incrimination did not include authorization to use appellant's statements from the plea inquiry to prove the contested specification. *See Ramelb,* 44 M.J. at 629–30.

18. According to appellant's testimony, at 1SG Thompson's direction, Sergeant First Class (SFC) Wyatt (a drill sergeant) chained appellant's right leg and left arm to the cot. In response to questions from the military judge, appellant stated that he was "secured to the cot" with "one shackle—leg iron—and one handcuff." First

Sergeant Thompson testified that he told SFC Wyatt "to shackle one arm, at least, to the cot," but could not recall if he told him "to shackle a leg as well." Sergeant First Class Wyatt testified he only shackled appellant's leg to the cot using a leg iron with a chain two to three feet in length and weighing approximately one to two pounds.

19. Sergeant First Class Wyatt testified he saw appellant "throughout the night," and "no one ever left [appellant's] area unoccupied with just [appellant] staying in that room."

hear him call out for assistance. Prior to appellant's placement in the "Ice House," PVT Rasch, another soldier in the unit, was placed there when the detention cell was full. The military judge found that "[PVT] Rasch, who had been ordered into pretrial confinement by his battery commander, was not placed in hand irons while he was billeted in the room, and escaped out of one of the room's windows, which did not have any security bars." We also adopt these findings of fact.

Applying these facts, the military judge made the following legal conclusions:

The conditions surrounding [appellant's] shackling to the cot were not unduly harsh and were reasonably related to military command and control needs, particularly in light of the fact that the [Provost Marshal detention cell] was not available to billet [appellant] for the evening in question ... [and] the conditions were not implemented with intent to punish or stigmatize [appellant] while he was facing disciplinary action.

The military judge granted five days of credit for the name calling and "public denunciation" in violation of Article 13, UCMJ, but no credit for having been shackled to the cot.

### Discussion

Unlawful pretrial punishment or confinement issues involve mixed questions of law and fact. *United States v. Smith*, 53 M.J. 168, 170 (C.A.A.F.2000); *United States v. McCarthy*, 47 M.J. 162, 164–65 (C.A.A.F. 1997). Our court conducts a de novo review of conclusions of law. *See Smith*, 53 M.J. at 170; *McCarthy*, 47 M.J. at 167. We will defer to the military judge's findings of fact that are not clearly erroneous and apply those facts in our review. *See United States v. King*, 61 M.J. 225, 227 (C.A.A.F.2005).

 Article 13, UCMJ, states:

No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence,

but he may be subjected to minor punishment during that period for infractions of discipline.

Thus, Article 13, UCMJ, prohibits: (1) purposefully imposing punishment or penalty on an accused before guilt is established at trial, that is, illegal pretrial punishment, and (2) arrest or pretrial confinement conditions more rigorous than circumstances require to ensure an accused's presence at trial, that is, illegal pretrial confinement. *See United States v. Fischer*, 61 M.J. 415, 418 (C.A.A.F. 2005); *United States v. Inong*, 58 M.J. 460, 463 (C.A.A.F.2003) (citing *United States v. Fricke*, 53 M.J. 149, 154 (C.A.A.F.2000)). If an appellant can establish that either prohibition was violated, he is entitled to sentence relief. *Inong*, 58 M.J. at 463 (citing *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2000)); *see* R.C.M. 905(c)(2). We will address appellant's pretrial confinement conditions under both prongs. *See McCarthy*, 47 M.J. at 165.

 First, we must decide whether appellant's pretrial confinement conditions constitute illegal pretrial punishment or constitute legally permissible restraint. In doing so, we must determine whether the conditions are imposed " 'for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *United States v. Palmiter*, 20 M.J. 90, 99 (C.M.A.1985) (Everett, C.J., concurring in the result) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Moreover, "[o]ne significant factor, but not the only one, in determining whether the conditions or terms of confinement violate Article 13 is the intent of the detention officials." *United States v. James*, 28 M.J. 214, 216 (C.M.A.1989). Additionally, if the particular condition of pretrial confinement is reasonably related to a legitimate government objective, and is reasonable under the circumstances, without more, it does not amount to punishment. *See United States v. Cruz*, 25 M.J. 326, 331 n. 4 (C.M.A. 1987); *Palmiter*, 20 M.J. at 99. Imposing "unduly rigorous circumstances during pretrial detention [may,] in sufficiently egregious circumstances, ... give rise to a permissible inference that an accused is being punished, or may be so excessive as to consti-

tute punishment." *McCarthy*, 47 M.J. at 165; *see also* R.C.M. 304(f); *James*, 28 M.J. at 216; *Palmiter*, 20 M.J. at 95.

██ We do not find that appellant's pretrial confinement conditions—being temporarily housed and shackled in a barracks utility room—constitute illegal pretrial punishment. We agree with the military judge's finding that appellant's pretrial confinement "conditions were not implemented with intent to punish or stigmatize" appellant. Our review of the record indicates that unit officials did not place appellant in the "Ice House" to punish or inflict any penalty upon him. The record establishes appellant was a pretrial prisoner who could not be secured in the detention cell overnight. Furthermore, unit officials did not want appellant to escape from the same room from which an unshackled pretrial prisoner previously escaped.[20]

Thus, we find no clear abuse of the military judge's discretion in his conclusion that appellant's [pretrial confinement conditions were] not done with any intent to punish appellant or inflict any penalty upon him for his alleged underlying misconduct, and that no impermissible 'punishment or penalty' actually occurred as a result.

*McCarthy*, 47 M.J. at 167.

██ We must next determine if appellant's shackling to a barracks room cot was "more rigorous" confinement "than ... required to insure" appellant's presence. *See* UCMJ art. 13. Army Reg. 190–47, Military Police: The Army Corrections System, para. 3–1c (15 Aug. 1996), requires a pretrial prisoner be housed in a detention cell or in a local civilian facility with which the installation has an agreement. According to the regulation, leg and hand irons are appropriate for pretrial prisoners in transit. *See id.* at paras. 11–3b(2), 11–3b(6), and 11–9. Appellant was not in transit; the barracks room provided temporary housing for a pretrial prisoner. *See id.* at para. 15–5 (defining temporary confinement); *see also id.* at para. 9–7e (prohibiting "securing a prisoner to a fixed object" while in a confinement facility except in emergency situations) and para. 11–9 ("Guards will not secure prisoners to any portion of an aircraft....").

The record contains no evidence indicating appellant was a flight risk or posed a risk to others. Moreover, the record does not reflect any violent, predatory, or excessively dangerous criminal behavior by appellant.[21] Furthermore, if unit officials believed appellant was a flight risk, other methods of restraint were available. The military judge found that at least four soldiers were on duty in the barracks building the entire night, and were within ten to twenty feet from appellant while he slept shackled to the cot.[22] Placing

---

20. First Sergeant Thompson testified PVT Rasch's escape from the same room, while awaiting pretrial confinement, was "a major factor" leading him to make the decision "directing ... Sergeant Wyatt [to] shackle [appellant] to the cot."

21. The record of trial does not contain any documentation reflecting the decision to place appellant into pretrial confinement. *See* R.C.M. 405 (referring to a "24–hour" commander's report, a "72–hour memorandum," a "48–hour probable cause determination," and a "7–day review of pretrial confinement"). During his opening statement on the motion for Article 13 credit, and again in his written R.C.M. 1105 submission, trial defense counsel stated that appellant waived his pretrial confinement hearing. We need not decide whether ordering appellant into pretrial confinement was appropriate. On his original charge sheet, dated 14 September 2001, appellant was charged with several offenses: violating the unit "no alcohol policy;" using, possessing, and distributing controlled substances (five specifications); larceny (two specifications); and false

swearing. These offenses occurred between 14 July 2001 and 2 August 2001. On an additional charge sheet, dated 28 November 2001, appellant was charged with additional offenses: wrongfully going from his appointed place of duty (*see* Section III, *supra*); disrespect toward the first sergeant and a unit noncommissioned officer (three specifications); violating the unit "no alcohol policy" (three specifications); violating various orders from the first sergeant (four specifications), e.g., "at ease" and "get your hair cut;" using and distributing controlled substances (two specifications); and extortion. These offenses occurred between 14 July 2001 and 13 October 2001. On 14 October 2001, appellant was placed in pretrial confinement, after the original charges were preferred and prior to preferral of the additional charges.

22. Private MacMahan testified that he was "the cadre monitor that night," and that appellant's door "was open ... with two CQ's watching him ... [who were] seated directly across from the door." Sergeant First Class Wyatt testified that

one of these soldiers—or any other properly supervised soldier in the same barracks—in the room with appellant overnight could have easily served the purpose of securing appellant's presence at his Article 32, UCMJ, hearing the following morning. Despite the apparent availability of unit personnel to provide for this lesser form of restraint, appellant was severely restrained without an individualized showing of cause that he would flee or otherwise fail to present himself the following day.

While we do not find that shackling a pretrial prisoner to a cot is per se unduly harsh, we are not persuaded that appellant's shackling was required to ensure he did not escape through an unsecured window as did an unshackled PVT Rasch awaiting pretrial confinement at a regular facility.[23] Such restraint was, therefore, not required to ensure appellant's presence at his pretrial Article 32, UCMJ, hearing scheduled the next day. *See generally Smith,* 53 M.J. at 172.

Based on the totality of the circumstances, we find that shackling appellant to the cot was a confinement condition "more rigorous than the circumstances required to insure his presence." UCMJ art. 13. Although appellant does not request a specific remedy, we will award ten days of confinement credit for the unusually harsh circumstances of appellant's pretrial confinement while awaiting his Article 32, UCMJ, investigative hearing.[24] *See United States v. Spaustat,* 57 M.J. 256, 261–62 (C.A.A.F.2002) (stating R.C.M. 305(k) "specifically authorizes more than day-for-day credit" for unduly harsh conditions of pretrial confinement); *see also United States v. Rendon,* 58 M.J. 221, 224–25 (C.A.A.F. 2003) (finding R.C.M. 305(k) credit appropriate remedy for physical restraint).

## VI. Conclusion

Appellant's remaining assertions made pursuant to *Grostefon,* 12 M.J. at 435–37, are without merit. The court orders that Specifications 1 and 2 of Charge III be merged into modified Specification 1 of Charge III, and be redesignated as the Specification of Charge III, to read as follows:

In that Private First Class Aaron P. Gilchrist, U.S. Army, did, at or near Fort Bliss, Texas, on or about 21 July 2001, steal $30.00 of U.S. currency and Xanax tablets of a value of about $20.00, the property of PVT RR, in violation of Article 121, UCMJ.

The findings of guilty of the Specification of Charge III, as redesignated, are affirmed. The finding of guilty of Specification 2 of Charge III is set aside and that specification is dismissed. The findings of guilty of Additional Charge I and its specification are set aside and are dismissed. The finding of guilty of Specification 3 of Additional Charge III is set aside and that specification is dismissed.

The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted, the entire record, and applying the principles of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for twelve months and twenty days, and reduction to Private E1. Appellant will also be credited with 177 days of confinement credit. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision, are ordered restored, as mandated by Articles 58b(c) and 75(a), UCMJ.

Judge ZOLPER and Judge WALBURN concur.

---

he saw appellant "all throughout the night," that the cadre monitor was present, and that he "briefed the fireguards ... to watch [appellant], and if he needed anything, to let the cadre monitor or [himself] know." First Sergeant Thompson testified that "there's two CQ runners on duty[, and] also a drill sergeant[; they are] there 24 hours a day, 7 days a week."

**23.** *See* note 20, *supra.*

**24.** Although the burden is on appellant to establish an Article 13, UCMJ, violation and entitlement to appropriate credit, *see Mosby,* 56 M.J. at 310 (citing R.C.M. 905(c)(2)), we find that the military judge's findings of fact and the facts as set forth in the record meet this burden.