# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and BORGERDING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 BENJAMIN R. WADA**
**United States Army, Appellant**

ARMY 20120457

Headquarters, 8th Theater Sustainment Command
Mark A. Bridges, Military Judge (arraignment)
David L. Conn, Military Judge (trial)
Colonel Lisa Anderson-Lloyd, Staff Judge Advocate

For Appellant: Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain J. Fred Ingram, JA (on brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Lieutenant Colonel Paul J. Cucuzzella, JA (on brief).

28 February 2014

---------------------------------
SUMMARY DISPOSITION
---------------------------------

LIND, Senior Judge:

A panel of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his plea, of one specification of aggravated assault with a means likely to cause death or grievous bodily harm in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (2006) [hereinafter UCMJ]. Pursuant to his pleas, a military judge convicted appellant of one specification of willfully disobeying a superior commissioned officer, one specification of willfully disobeying a non-commissioned officer, one specification of resisting apprehension, one specification of assault consummated by a battery, and one specification of wrongfully communicating a threat in violation of Articles 90, 91, 95, 128, and 134, UCMJ, 10 U.S.C. §§ 890, 891, 895, 928, and 934 (2006) [hereinafter UCMJ]. The panel sentenced appellant to a bad-conduct discharge, confinement for three years, and reduction to the grade of E-1. The convening authority approved the adjudged

sentence and credited appellant with seven days confinement against the sentence to confinement.

This case is before the court for review under Article 66, UCMJ.  Appellant raises one assignment of error alleging that his conviction for aggravated assault is both factually and legally insufficient.  We agree that the evidence is factually insufficient to support a finding of guilty to aggravated assault with means likely to cause death or grievous bodily harm.  We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they are without merit.

## FACTS AND PROCEDURAL BACKGROUND

On 29 December 2011, appellant and his wife, TW, got into an argument while driving to Burger King on Schofield Barracks, Hawaii, in a large Sport Utility Vehicle (SUV).  TW's two-year-old son was in the back seat on the driver's side. A witness, Sergeant (SGT) JW, who was wearing an Army Combat Uniform, was parked at Burger King.  Sergeant JW's attention was drawn to the arriving SUV because it was accelerating and braking as it entered the Burger King parking lot. The SUV came to a stop near SGT JW with TW in the front passenger seat.  During this time, appellant, who was in the driver's seat, was striking and choking TW.

The events that occurred afterward formed the basis of the contested aggravated assault charged in Specification 1 of Charge I.  This specification alleged in relevant part that appellant "commit[ted] an assault upon TW by dragging her from and striking her with a means likely to produce death or grievous bodily harm, to wit:  a sport utility vehicle."

The government case regarding this charge consisted of one witness, SGT JW, who testified using Prosecution Exhibit 1, an aerial photograph of the scene.  During his testimony, SGT JW repeatedly referred to Prosecution Exhibit 1, but no markings were placed on the exhibit to memorialize his testimony nor does the exhibit contain a legend identifying the places described.

Sergeant JW testified to the following facts.  When he witnessed appellant choking and striking TW, he yelled "stop!" and approached the SUV to help TW. The SUV was stopped, and TW opened the door and attempted to exit the vehicle as SGT JW reached for her hand.  As TW was trying to exit the vehicle, appellant grabbed her by the throat and accelerated the vehicle.  Before striking a curb, appellant let go of TW and she "rolled down the side of the vehicle as [appellant] was turning away . . . it was her left shoulder passing her right shoulder, tumbling, striking the side of the vehicle as the vehicle was taking off."  When appellant let go of TW, he grabbed the steering wheel, turned sharply to the left, and "took off down the driveway."  TW was crying and said to SGT JW: "He's crazy.  He's got my son."

SGT JW then walked TW into Burger King to sit her down and told her he would interact with appellant and get her son. Later in his testimony, SGT JW said that the SUV dragged TW "from there to there [using Prosecution Exhibit 1], her feet were dragging in sandals." SGT JW also acknowledged that although he made a sworn statement to law enforcement on the night of the incident, he failed to include any mention in the written statement that TW was struck by the SUV.

In addition to cross-examination of SGT JW, impeaching him with inconsistencies between his sworn statement, Article 32 testimony, and trial testimony—particularly with distance estimations—the defense case consisted of TW and Specialist (SPC) KC.

TW testified to the following facts. While she was inside the SUV, appellant struck and choked her with his hand and forearm. When the SUV pulled in to the parking lot, TW opened the passenger door, screamed for help because she was "in fear for [her] life and [her] son's life," and SGT JW helped her exit the vehicle. She immediately attempted to open the passenger side back door to get her son out of the car, and while her hand was on the door handle, appellant accelerated. TW took a step or two holding the door handle, then let go, and ultimately chased the SUV to an adjacent parking lot to get her son. TW further testified that: she was not struck by the SUV; she was not injured in any way by the SUV; she was wearing slippers at the time; and her feet never dragged across the ground. During cross-examination, TW admitted appellant provided her with financial support; she was enrolled as his military dependent; she was aware appellant might be sentenced to confinement; and that aggravated assault was a more serious charge than the assault consummated by battery to which appellant had pleaded guilty.

Specialist KC testified to the following facts. Specialist KC was at the barracks parking lot across from Burger King when he heard a scream. He then saw a car with someone seated in the driver's seat and a woman on the passenger side looking like her hand was on the door handle trying to either get in or get out of the car. The car began to accelerate with the woman still holding onto the door handle. It "looked like [the woman] was . . . walking beside" the vehicle before she let go of the door handle. From his vantage point, it did not look like the vehicle struck the woman. He also saw a soldier wearing an Army Combat Uniform close to the scene. Specialist KC was impeached by the government about the facts that: he was feeling the effects of alcohol; his view was obstructed until he was about 300 feet away; his contact lenses were drying out and blurred at night; and when he saw TW, she was already out of the vehicle.

With regard to Specification 1 of Charge I, the panel was instructed on aggravated assault with a means likely to cause death or grievous bodily harm, the lesser-included offense of assault consummated by a battery, and variance. The findings worksheet allowed the panel to except the words "dragging her from and"

and "striking her with" and "a means likely to produce death or bodily harm." The members found appellant guilty of aggravated assault except the words "dragging her from and," thus finding him guilty of aggravated assault by striking TW with the SUV.

## LAW AND ANALYSIS

Article 66(c), UCMJ, provides that a Court of Criminal Appeals "may affirm only such findings of guilty . . . as it finds correct in law and fact." In performing our duty, we must conduct a de novo review of legal and factual sufficiency. *United States v. Gilchrist*, 61 M.J. 785, 793 (Army. Ct. Crim. App. 2005) (citing *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002)). The test for factual sufficiency is "whether, after weighing the evidence of record and making allowances for not having personally observed the witnesses, [this court is] convinced of appellant's guilt beyond a reasonable doubt." *Gilchrist*, 61 M.J. at 793 (citing *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). This review for factual sufficiency "involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *Washington*, 57 M.J. at 399. "[T]o sustain appellant's conviction, we must find that the government has proven all essential elements and, taken together as a whole, the parcels of proof credibly and coherently demonstrate that appellant is guilty beyond a reasonable doubt." *Gilchrist*, 61 M.J. at 793 (citation omitted).

We have weighed the evidence, making allowances for not personally observing the witnesses. *See Washington*, 57 M.J. at 399. Because Prosecution Exhibit 1 contains no legends or markings, we cannot identify most of the areas described by SGT JW or SPC KC, and that is important to our determination regarding whether we can find beyond a reasonable doubt that the SUV actually struck TW. Sergeant JW's testimony, standing alone, contradicted by the testimony of TW and SPC KC in the absence of any evidence of injury to TW, is not sufficient to prove to us beyond a reasonable doubt that TW was struck by the SUV. Therefore, after a thorough review of the record, we find the evidence factually insufficient to support appellant's conviction of aggravated assault.

## CONCLUSION

The finding of guilty of Specification 1 of Charge I is set aside and that specification is dismissed. The remaining findings of guilty are AFFIRMED.

Although appellant requests a sentence rehearing, after conducting a thorough analysis in accordance with the principles articulated in *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and the factors set forth in *United States v.*

4

*Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we are confident in our ability to reassess appellant's sentence.

In evaluating the *Winkelmann* factors, we find there is no dramatic change to the sentencing landscape. 73 M.J. at 15-16. The maximum sentence is reduced in terms of confinement by only 3 years, from 13 years and 6 months to 10 years and 6 months. Although the more serious aggravated assault specification involving TW no longer stands, appellant remains convicted of a number of serious and violent offenses, thus, the gravamen of his misconduct has not significantly changed. *Id.* at 16. Additionally, evidence of appellant's actions after striking and choking TW would have nonetheless been admissible as aggravation evidence during sentencing. *Id.* Finally, the charges before us are commonly reviewed by this court. *Id.*

We affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for thirty-four months, and reduction to the grade of E-1. After our review of the record, we are confident that, absent the dismissed specification, the panel would have adjudged a sentence of at least that severity. *See Sales,* 22 M.J. at 308. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), and 75(a).

Judge KRAUSS and Judge BORGERDING concur.

FOR THE COURT:

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court

5