**UNITED STATES**

v.

**Senior Airman Todd M. DAVIS, United States Air Force.**

**ACM 33265.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 20 Feb. 1998.

Decided 15 Nov. 2000.

---

Appellate Counsel for Appellant: Captain Kyle R. Jacobson (argued), Colonel Douglas H. Kohrt, Lieutenant Colonel Timothy W. Murphy, Captain Natasha V. Wrobel and Captain Michael J. Apol.

Appellate Counsel for the United States: Captain Christopher A. Santoro (argued), Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, Major J. Robert Cantrall, and Major Lance B. Sigmon.

Before YOUNG, *Chief Judge*, SPISAK, *Senior Judge*, and BURD, *Appellate Military Judge*.

## OPINION OF THE COURT

SPISAK, *Senior Judge*:

The appellant pled guilty to four specifications of larceny and not guilty to housebreaking, three other specifications of larceny, selling military property, and making false official statements. Articles 130, 121, 108, 107, UCMJ, 10 U.S.C. § 930, 921, 908, 907. Contrary to his pleas, officer and enlisted members found the appellant guilty of all of the charges and specifications. The appellant's approved sentence consists of a bad-conduct discharge, confinement for 1 year, forfeiture of all pay and allowances, and reduction to E–1. The appellant now complains that the evidence was both legally and factually insufficient to find him guilty of Charge I, Specifications 1 and 2 (housebreaking). The appellant also complains that the evidence in support of Charge II, Specification 4 (larceny of 13 refrigerators, 15 microwave ovens, 12 coffeemakers, and 25 sets of pots and pans), and Charge IV (making false official statements) is legally and factually insufficient. We heard oral argument on the legal and factual sufficiency of the evidence of housebreaking at the Howard University, School of Law, Washington, D.C., on 1 November 2000.

## I. FACTUAL BACKGROUND

The appellant worked in the force management unit of the Services Squadron at Vandenberg Air Force Base, California. Force management stored mobility equipment in a warehouse that was controlled by lodging, another unit within the Services Squadron. Because Force Management was unable to access the equipment during a night-time exercise, the lodging manager, Mr. Infante, was directed to give them a key to the warehouse to enable 24 hour access to their equipment. Mr. Infante signed a key out to the appellant.

Force management kept its key in an unlocked key box inside the office. Every member of the unit had free access to the

office. Additionally, an office key was secreted above a light outside the office door in case someone forgot his or her key. The appellant took the warehouse key and, at approximately 2130 on 6 September 1997, entered the warehouse and loaded refrigerators, microwave ovens, coffeemakers, and pot and pan sets into his pick-up truck. He stored these items in his garage until selling them at a local swap meet.

## II. LEGAL AND FACTUAL SUFFICIENCY

■ Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires that we approve only those findings of guilt that we determine to be correct in both law and fact. The test for legal sufficiency is whether, when the evidence is viewed in the light most favorable to the government, a reasonable factfinder could have found the appellant guilty of all elements of the offense, beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *United States v. Ladell*, 30 M.J. 672, 673 (A.F.C.M.R.1990). The test for factual sufficiency is whether, after weighing the evidence and making allowances for not having observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325.

### A. Housebreaking Specifications

The appellant contends that the evidence is legally and factually insufficient to find him guilty of housebreaking because he had unlimited authority to enter the warehouse at any time—a key had been issued to him personally, no limiting instruction or guidance had been provided by his superiors, he was authorized 24–hours access, and he had access to the entire building.

■ Housebreaking requires proof that the accused (1) unlawfully entered a building or structure; and, (2) that he entered with the concurrent intent to commit a crime within the building or structure. Article 130, UCMJ, 10 U.S.C. § 930. However, "evidence of intent to commit a criminal offense may not be used to prove the unlawfulness of the entry. Proof that the [appellant] had the intention to commit larceny when he entered the [warehouse] would not be indicative that his entry was unlawful." *United States v. Doskocil*, 2 C.M.R. 802, 804, 1952 WL 1808 (A.F.B.R.1952). Therefore, although the thefts he committed indicate a criminal intent, they do not help determine the lawfulness or unlawfulness of his entry into the building.

■ Similarly, when one enters a building with proper authority but also has the intent to commit a crime, the entry is not unlawful. *United States v. Fayne*, 26 M.J. 528, 531–32 (A.F.C.M.R.1988); *United States v. Cox*, 14 C.M.R. 706, 1954 WL 2205 (A.F.B.R.1954). Thus the question we must answer is whether the appellant had authority to enter the warehouse on divers occasions between August and September 1997, as charged. We find that he did not.

■ In 1954, the Court of Military Appeals considered the same question in a case involving the entry, "in the dead of night" of a barracks by one who was not a resident of that building. After finding that the building was of a "semi-private" nature, the court asked, "Was the accused ... authorized to act as he did in the particular case by those sometimes indistinct sources of power to grant the indulgence?" *United States v. Williams*, 15 C.M.R. 241, 246–47, 1954 WL 2282 (C.M.A.1954). Here too we are faced with an entry into a semi-private building and must answer much the same question. The Court explained that the answer depends on a variety of circumstances, which were partially set forth in the opinion, but which are not all inclusive. Additionally, no one circumstance will necessarily control, or even maintain relevance, in all cases. Those circumstances are:

(a) the nature and function of the building involved;

(b) the character, status and duties of the entrant, and even at times his identity;

(c) the conditions of the entry, including time, method, ostensible purpose, and numerous other factors of frequent relevance but generally insusceptible of advance articulation;

(d) the presence or absence of a directive of whatever nature seeking to limit or regulate free ingress;

(e) the presence or absence of an explicit invitation to the visitor;

(f) the invitational authority of any purported host;

(g) the presence or absence of a prior course of dealing, if any, by the entrant with the structure or its inmates, and its nature—and so on.

*Williams,* 15 C.M.R. at 247.

■ Applying these circumstances to the facts here, we find that the building was a storage unit with limited access to assure safekeeping of appliances, furniture, and supplies (*Williams* circumstance (a)). The appellant's duties authorized him to enter the building, but he was not on duty at the time of his entry (*Williams* circumstance (b)). He entered the warehouse "in the dead of night" with no legitimate or lawful reason for doing so (*Williams* circumstance (c)). True, he could have legitimately entered at any time of the day or night in order to retrieve mobility equipment for exercises or actual deployments; however, no exercise or deployment occurred during the charged period. Therefore, he can not articulate even an "ostensible" lawful purpose for entering the building. *See Fayne,* 26 M.J. 528 (entry lawful where estranged wife invited accused to enter home to take bed even though accused took additional property); *Cox,* 14 C.M.R. 706, 1954 WL 2205 (entry by air policeman to conduct authorized security check lawful even though he committed larceny after entry).

Mr. Infante, who had authority over the entire facility, was "directed" to give a warehouse key to force management. He assumed that force management imposed limitations on access to the building similar to those he himself enforced. Thus, there is no evidence that Mr. Infante explicitly or implicitly gave the appellant blanket authority to enter the warehouse (*Williams* circumstances (e) and (f)). Rather, he provided a key so that a unit with a requirement for limited access could obtain that limited access for official purposes. Although force management had no specific directive limiting or regulating access to the warehouse, the appellant's supervisor authorized entry only for official purposes (*Williams* circumstance (d)). Finally, there is no evidence to suggest that the appellant or others entered the warehouse at night without authorization (*Williams* circumstance (g)).

Viewed in accordance with the *Williams* "circumstances," a reasonable factfinder could easily find the appellant guilty of housebreaking. Additionally, we are ourselves convinced beyond a reasonable doubt of his guilt.

## B. Larceny and False Official Statement

■ Charge II, Specification 4, alleged that the appellant stole 13 refrigerators, 28 microwave ovens, 24 coffeemakers, and 31 boxed sets of pots and pans. The appellant pled guilty to taking 4 refrigerators, 5 microwave ovens, 7 coffeemakers, and 7 boxed sets of pots and pans. Contrary to that plea, the members found him guilty of stealing 13 refrigerators, 15 microwave ovens, 12 coffeemakers, and 25 boxed sets of pots and pans. The appellant contends that the evidence is insufficient to support more than the numbers to which he pled, and therefore, the evidence is also insufficient to support the charge of making false official statements about the numbers of items stolen. We do not agree.

The appellant told the civilian police officer who first questioned him that he sold 2 refrigerators and 4 microwave ovens on 14 September 1997 and that he brought 2 cases of coffeemakers to the swap meet that day. Each case contained 6 coffeemakers. Two civilian witnesses testified that they saw the appellant at the swap meet on 14 September 1997 and, one witness also saw him on 7 September 1997. Taken together the testimony of these two witnesses indicates that the appellant took between 10 and 15 refrigerators, 15 and 20 microwave ovens, and 15 to 25 sets of pots and pans to the two swap meets. Additionally, an inventory conducted by an employee of the lodging unit of Services Squadron demonstrated that 13 refrigerators, 28 microwave ovens, 24 coffeemakers, and 31 sets of pots

and pans were missing from the warehouse on 10 September 1997.

We are satisfied that any reasonable fact-finder could find the appellant guilty beyond a reasonable doubt of stealing 13 refrigerators, 15 microwave ovens, 12 coffeemakers, and 25 sets of pots and pans. Moreover, we are ourselves convinced beyond a reasonable doubt that he stole at least that many of each item.

Having found that the appellant stole 13 refrigerators, 15 microwave ovens, 12 coffeemakers, and 25 sets of pots and pans, it is clear that the members could also find beyond a reasonable doubt that the appellant's official statements to investigators, in which he claimed he took fewer of each, were false. We are also convinced beyond a reasonable doubt of the appellant's guilt of this charge.

## III. CONCLUSION

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings and sentence are

AFFIRMED.