UNITED STATES, Appellee

v.

Todd M. DAVIS, Senior Airman
U.S. Air Force, Appellant

No. 01-0237

Crim. App. No. 33265

_____

United States Court of Appeals for the Armed Forces

Argued October 3, 2001

Decided February 14, 2002

BAKER, J., delivered the opinion of the Court, in which CRAWFORD, C.J., GIERKE and EFFRON, JJ., and SULLIVAN, S.J., joined. SULLIVAN, S.J., filed a concurring opinion.


Counsel

For Appellant: Captain Jefferson B. Brown (argued); Colonel James R. Wise, Lieutenant Colonel Timothy W. Murphy, and Captain Kyle R. Jacobson (on brief); Lieutenant Colonel Beverly B. Knott.

For Appellee: Major Linette Romer (argued); Colonel Anthony P. Dattilo and Major Lance B. Sigmon (on brief).


Military Judge: Michael J. Rollinger


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION

Judge BAKER delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of officer and enlisted members.  Pursuant to mixed pleas, he was found guilty of making a false official statement, wrongful sale of military property, larceny, and housebreaking, in violation of Articles 107, 108, 121, and 130, Uniform Code of Military Justice (UCMJ), 10 USC §§ 907, 908, 921, and 930, respectively. The sentence to a bad-conduct discharge, confinement for one year, total forfeitures, and reduction to pay grade E-1 was approved by the convening authority as adjudged, and the Court of Criminal Appeals affirmed.  54 MJ 622 (2000)

This Court granted review on the following issue:

> WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT TO SUPPORT
> APPELLANT'S CONVICTION FOR HOUSEBREAKING WHERE
> APPELLANT'S AUTHORITY TO ENTER THE WAREHOUSE SPECIFIED
> IN THE CHARGE WAS DEMONSTRATED BY THE ISSUANCE OF A
> KEY TO APPELLANT AND WHERE APPELLANT WAS NEVER
> INSTRUCTED THAT THE TIME AND MANNER OF HIS ACCESS WITH
> THAT KEY WAS LIMITED.

For the reasons set forth, we conclude the evidence was sufficient and affirm.

## BACKGROUND

The court below found the following facts relevant to the granted issue:

> The appellant worked in the force management unit
> of the Services Squadron at Vandenberg Air Force Base,
> California.  Force management stored mobility
> equipment in a warehouse that was controlled by
> lodging, another unit within the Services Squadron.

2

United States v. Davis, No.01-0237/AF

> Because Force Management was unable to access the
> equipment during a night-time exercise, the lodging
> manager, Mr. Infante, was directed to give them a key
> to the warehouse to enable 24 hour access to their
> equipment.  Mr. Infante signed a key out to the
> appellant.
>     Force management kept its key in an unlocked key
> box inside the office.  Every member of the unit had
> free access to the office.  Additionally, an office
> key was secreted above a light outside the office door
> in case someone forgot his or her key.  The appellant
> took the warehouse key and, at approximately 2130 on 6
> September 1997, entered the warehouse and loaded
> refrigerators, microwave ovens, coffeemakers, and pot
> and pan sets into his pick-up truck.  He stored these
> items in his garage until selling them at a local swap
> meet.

54 MJ at 623-24.

## DISCUSSION

Appellant's claim that the evidence is insufficient as a matter of law turns on whether his entry into the warehouse was "unlawful."  Such claims require us to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Turner, 25 MJ 324 (CMA 1987).  Furthermore, we will draw every reasonable inference from the evidence of record in favor of the prosecution.  United States v. Rogers, 54 MJ 244, 246 (2000); United States v. Blocker, 32 MJ 281, 284 (CMA 1991).

The offense of housebreaking requires proof that the accused (1) unlawfully entered a building or structure; and (2)

3

entered with the concurrent intent to commit a crime within the building or structure.  Para. 56b, Part IV, Manual for Courts-Marital, United States (2000 ed.).[1]  United States v. Williams, 4 USCMA 241, 15 CMR 241 (1954), remains our benchmark for analysis of the lawfulness of the entry into a semiprivate structure, which is the circumstance presented on appeal.[2]

This Court in Williams classified buildings or structures into three groups: private, public, and semiprivate.  Id. at 246, 15 CMR at 246.  In that case, Williams entered an occupied barracks during the night, where he committed larceny of the occupants' belongings while they slept.  Since this Court determined the barracks was a semiprivate structure, we sought to determine whether or not the accused in entering such a structure was "authorized to act as he did in the particular case by those sometimes indistinct sources of power to grant the indulgence."  Id. at 246-47, 15 CMR at 246-47.  We concluded that "the lawfulness of an entry for. . . [these] purposes depends on authorization, negative or positive, express or implied" and must be determined based on the circumstances in

---

[1] All Manual provisions are identical to the ones in effect at the time of appellant's court-martial.

[2] Appellant has not argued that the structure entered was either private or public in nature.

4

each case. Id. at 247, 15 CMR at 247. We identified seven factors relevant to this question:

(a) the nature and function of the building involved;

(b) the character, status, and duties of the entrant, and even at times his identity;

(c) the conditions of the entry, including time, method, ostensible purpose, and numerous other factors of frequent relevance but generally insusceptible of advance articulation;

(d) the presence or absence of a directive of whatever nature seeking to limit or regulate free ingress;

(e) the presence or absence of an explicit invitation to the visitor;

(f) the invitational authority of any purported host; and

(g) the presence or absence of a prior course of dealing, if any, by the entrant with the structure or its inmates, and its nature.

Id. We avoided any suggestion that the list was exhaustive and indicated that "no one of. . .[these factors] will necessarily control, or even maintain relevance, in all cases." Id.

Both sides have invited our attention to state court decisions that address the issue of the lawfulness of an entry, usually in the context of a burglary.[3] Appellant specifically urges our consideration of State v. Feldt, 781 P.2d 255 (Mont.

---

[3] The Government has cited Jackson v. State, 64 S.W. 864 (Tex. Crim. App. 1901)(where a servant enters the master's house with a criminal intent, there is unlawful entry when he enters an area not encompassed within his duties). Conversely, appellant cites State v. Feldt, 781 P.2d 255 (Mont. 1989)(no unlawful entry where defendant enters store with criminal intent but uses keys given by store manager).

1989).  There, a store manager allowed employees to enter the store after business hours.  The manager gave Feldt keys to the store for "any proper purposes."  Id. at 256.  Feldt subsequently entered the store after hours and stole money from the safe.  Interpreting the state burglary statute, the state Supreme Court noted that the statute defined unlawful entry as an entry by one "not licensed, invited, or otherwise privileged to do so."  Id.  Since Feldt had been granted the keys and allowed to enter after hours, the court held that his entry was not trespassory.  Id. at 257.

We recognize that state courts are free to analyze state statutes based on specific statutory language, their interpretation of the state legislature's intent, and societal interests in drafting the statute.  However, here we are concerned only with what kind of entry is proscribed under Article 130.

Paragraph 56d of Part IV of the Manual lists unlawful entry under Article 134, UCMJ, 10 USC § 934, as a lesser-included offense of housebreaking.[4]  The explanation under the offense of

---

[4] The elements of unlawful entry under Article 134 are:

    (1) That the accused entered the real property of another or certain personal property of another which amounts to a structure usually used for habitation or storage;

    (2) That such entry was unlawful; and

unlawful entry states: "An entry is 'unlawful' if made without the consent of any person authorized to consent to entry or without other lawful authority." Para. 111c, Part IV, Manual, supra. While the President could have chosen words such as "invitation," "license," or "privilege," he chose the term "authority." The term is one upon which the very nature of a military organization is based. The term also carries with it the notion that implicit in a grant of authority is the understanding that it will be exercised for proper purposes.

Daily, military members are granted authority to use all kinds of equipment and any number of types of weapons. Implicit in such authority is the understanding that such equipment may only be used for a proper purpose.[5] A requirement that every grant of authority expressly detail the lawful limits of the use of that authority would work an undue burden and could consequently debilitate the effectiveness of the fighting force.

---

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 111b, Part IV, Manual, supra.

[5] In evaluating questions of command authority, we look to whether the purpose behind the grant of authority was proper. See United States v. Surtasky, 16 USCMA 241, 243, 36 CMR 397, 399 (1966)(grant of authority by Secretary of the Navy to convene special courts-martial was "designed to achieve a proper purpose"). We think this a useful analogy in the present context. A purpose might well be proper, albeit not necessarily official. For example, one authorized general access who enters a warehouse after hours to retrieve personal property left behind during duty hours might enter with a proper, albeit not necessarily an official purpose.

Such an implication accords with common sense, especially when the implied condition is simply one that requires the authority granted be exercised for a proper purpose.  We fully recognize that one granting such authority is free to expressly broaden or restrict the authority given.  Likewise, the limits of such authority may be implicitly affected by a course of accepted conduct or other appropriate factors that reasonably lead one to conclude that the grant of authority has been broadened.

                              ANALYSIS

     Considering these principles, and considering the Williams factors, the question in the instant case is whether there was sufficient evidence of record for the members to find beyond a reasonable doubt that appellant's entry into the warehouse was unlawful.  There was evidence that the equipment in the warehouse for which appellant's section was responsible was segregated from the lodging section's equipment.  While appellant indeed had a key to the warehouse to gain access after hours, his officer-in-charge, Second Lieutenant (2Lt) Borchers, testified that there was no official need for appellant's entry at the time in question.  He also testified that he never authorized appellant to enter the warehouse for any purpose other than official business, suggesting a usual course of dealing with respect to access to the warehouse.  Further, he testified that his section did not have authority over any

8

portion of the warehouse other than that part containing his section's equipment.  The record is unclear whether 2Lt Borchers expressly conveyed to appellant that authority to enter was limited to "official business."  However, under the facts of this case, authority to access the key to enter carried with it an implicit obligation to enter the warehouse for an official or proper purpose and only to access the segregated area under Force Management's responsibility.[6]

Although not necessary to our decision, we note that the record is devoid of any evidence offered by appellant to the members that his understanding was to the contrary, nor is there any evidence that he offered any ostensible purpose for his entry into the warehouse, with or without reference to the deferential standard of Jackson v. Virginia.  Indeed, this record supports a conclusion that appellant entered for a purpose directly inconsistent with the very purpose of the structure itself, i.e., safekeeping of the property contained therein.

Finally, appellant reminds us that proof that he entered with a criminal intent alone will not satisfy proof of the unlawfulness of the entry.  Since, in his case, the only

---

[6] Therefore, we need not determine whether the elements of the offense would have been met were appellant authorized general access to the warehouse in terms of time and scope.

evidence the members could have considered on the unlawfulness of the entry was his criminal intent to commit larceny, appellant argues, the evidence is insufficient on this element. In Williams, we did indeed hold that "an 'unlawful entry' is not established through a showing of mere ingress with contemporaneous criminal intent[.]"  4 USCMA at 246, 15 CMR at 246.  However, we have never suggested that the factors discussed in Williams render intent or purpose irrelevant.  To the contrary, the purpose for the entry, then as now, ostensible or otherwise, remains a relevant factor in determining whether the entry was lawful, i.e., whether the entry was consistent with applicable authority or evidence of the first element of housebreaking.

CONCLUSION

In sum, appellant argues that since he was authorized access to the warehouse at any time, and since he was never expressly instructed that this authority was limited to official business or otherwise, no entry on his part could ever be unlawful.  As we have noted earlier, military life demands that military officials be allowed to grant authority with the implicit understanding that such authority will be exercised for a proper purpose.  Moreover, appellant's reasoning is inconsistent with the contextual analysis of Williams.  Thus, we reject his claim of insufficiency.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v Davis, No. 01-0237/AF

SULLIVAN, Senior Judge (concurring):

Article 130, Uniform Code of Military Justice, states:

### § 930.  Art. 130.  Housebreaking

Any person subject to this chapter who <u>unlawfully</u> enters the building or structure of another with intent to commit a criminal offense therein is guilty of housebreaking and shall be punished as a court-martial may direct.

(Emphasis added.)  The unlawfulness of the entry is an element of the offense to be determined by the factfinders based on the evidence in each case.  See <u>United States v. Williams</u>, 4 USCMA 241, 246-47, 15 CMR 241, 246-47 (1954); <u>see</u> <u>generally</u> <u>United States v. New</u>, 55 MJ 95, 114 (2001) (Sullivan, J., concurring in the result).

Military appellate courts have resolved legal sufficiency challenges in cases similar to appellant's.  See <u>United States v. Yingst</u>, 42 CMR 903 (ACMR 1970) (evidence sufficient where it demonstrates no official duty to enter hangar after duty hours in dead of night and after building vacated);  <u>cf</u>. <u>United States v. Cox</u>, 14 CMR 706 (AFBR 1954) (evidence insufficient where entry by accused authorized by order to perform security check).

In my view, the scope of the authority to enter is critical. Here, there was ample evidence presented that appellant was authorized to enter the warehouse <u>only</u> to perform military duties pertaining to Force Management.  There also was ample evidence that he did not enter the warehouse on the night in question to perform those duties.  Relying on the criteria delineated by this

Court in <u>Williams</u> to show unlawfulness, I conclude this was legally sufficient evidence to support a finding that appellant's entry was unlawful and sustain his conviction for violating Article 130, UCMJ.  <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).