# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, MORAN, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant CLINTON R. HARDIN**
**United States Army, Appellant**

ARMY 20120051

Headquarters, V Corps
Wendy P. Daknis, Military Judge
Colonel Mark D. Maxwell, Staff Judge Advocate

For Appellant: Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Brian J. Sullivan, JA (on brief).

For Appellee: Colonel John P. Carrell, JA; Major Elisabeth A. Claus, JA; Major Kenneth W. Borgnino, JA; Captain Ryan D. Pyles, JA (on brief).

12 June 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALDYKIEWICZ, Judge:

A general court-martial composed of a panel of officers and enlisted members convicted appellant, contrary to his pleas, of one specification of housebreaking in violation of Article 130, Uniform Code of Military Justice, 10 U.S.C. § 930 (2006) [hereinafter UCMJ].[1] The convening authority approved the adjudged sentence of a bad-conduct discharge and reduction to E-1.

This case is before us for review pursuant to Article 66, UCMJ. Appellant alleges that the evidence is both legally and factually insufficient to sustain his

---

[1] Appellant was also charged with and found not guilty of four specifications alleging a violation of Article 120, UCMJ. The military judge entered a finding of not guilty regarding one specification of aggravated sexual assault following appellant's successful motion for a finding of not guilty and the panel acquitted appellant on the remaining specification of abusive sexual contact and two specifications of wrongful sexual contact.

conviction and that the evidence fails to show that the entry into the room forming the basis for his housebreaking conviction was unlawful or with any intent to commit a criminal offense therein. With respect to the latter, appellant alleges that his level of intoxication on the night in question negated his ability to form the requisite specific intent necessary for a housebreaking conviction. Appellant's allegation challenging the factual sufficiency of his conviction, specifically whether appellant's entry into the room in question was unlawful, has merit and warrants discussion and the relief provided in our decretal paragraph.

**FACTS**

On 29 May 2011, Mrs. EE and her husband, Sergeant (SGT) JE, held a barbecue/party at their apartment in the Wetzel Housing area in Baumholder, Germany. The gathering was to welcome appellant and his family to the community. The party was attended by seven adults: Mrs. EE and SGT JE; Mrs. BC and her husband, Specialist (SPC) AC; appellant and his wife, Mrs. LH; and Mrs. SF. The partygoers began drinking alcohol around 1930 hours, with some continuing to drink until approximately 0300 the following morning (*i.e.*, 30 May 2011).

Around midnight, appellant and SPC AC carried an obviously intoxicated and nearly passed out SGT JE to the bathroom where he proceeded to vomit, after which appellant and SPC AC placed SGT JE in his bed in the master bedroom [hereinafter bedroom] where he laid unconscious. Accompanying appellant and SPC AC to the bedroom were appellant's spouse, Mrs. LH, and SGT JE's spouse, Mrs. EE. After putting SGT JE to bed, all departed the bedroom, returning to the living room to continue drinking.

At approximately 0130 hours, SPC AC and his spouse, Mrs. BC, left the party to return to their apartment. An hour later, at around 0230 hours, SPC AC and Mrs. BC returned to the party. Shortly thereafter, SPC AC, Mrs. BC, appellant, Mrs. LH, and Mrs. EE reentered the bedroom where SGT JE remained unconscious. Their return to the bedroom was to play jokes on and take advantage of SGT JE's unconscious state. Over the next fifteen to twenty-five minutes, in addition to writing on SGT JE's face, pictures were taken of appellant and SGT JE lying together on the bed, six of which were admitted by the government in its case in chief. Four of the pictures show appellant making physical contact with SGT JE. In one picture, appellant appears as if he is about to place a finger in SGT JE's open mouth. In another, appellant has his arm draped across SGT JE's chest as he attempts to whisper into SGT JE's ear. In yet another, appellant is lying next to SGT JE with his leg over SGT JE's torso and lower body.

Around 0300 hours, the party began to wind down. Approximately 30 minutes later, SPC AC and Mrs. BC left and went home. Around that same time, appellant passed out on SGT JE's and Mrs. EE's couch/loveseat [hereinafter couch].[2]

At approximately 0400, SGT JE awoke to find his wife, Mrs. EE, ill on the bathroom floor from her alcohol consumption. Sergeant JE assisted his wife from the bathroom and proceeded to the living room where they found Mrs. LH and appellant, the latter still unconscious on the couch. Mrs. LH was unable to awaken appellant, and Mrs. EE and SGT JE agreed to allow him to sleep on their couch. After walking Mrs. LH to the door, SGT JE and Mrs. EE went to bed at approximately 0415 to 0430 hours. Neither SGT JE nor Mrs. EE testified that they closed their bedroom door, let alone locked it prior to going to bed. Mrs. EE testified that when she went to bed she was still "kind of drunk" and that she fell asleep "instantly."

Sometime around 0500 hours, appellant entered the bedroom where he made physical contact with Mrs. EE. Mrs. EE testified that she felt someone touch her vagina; however, she initially thought it was her husband touching her and ignored it, thinking the touching would stop. Rather than stop, Mrs. EE felt her shorts being unbuttoned and pulled down. Realizing the person touching her was not her husband, she awoke her husband and told him someone was "touching her down there." Sergeant JE awoke to find appellant on his hands and knees at the end of the bed. When confronted, appellant said nothing. Sergeant JE immediately escorted appellant out of the apartment after which law enforcement authorities were notified.

Prior to deliberating on findings, the military judge instructed the panel, in part, as follows:

> In order to find the accused guilty of [housebreaking], you
> must be convinced by legal and competent evidence
> beyond a reasonable doubt:

---

[2] Although the exact amount of alcohol appellant consumed is not established, estimates range from as little as 10 drinks to over 30 drinks ranging from beer, "buttery nipples" (Irish cream and butterscotch liquor), Jagermeister liquor mixed with Redbull energy drink, to Jell-O shots made with an estimated one ounce of vodka per shot. The unrebutted expert testimony in the case estimated appellant's blood alcohol content (BAC) at 0500 hours in the range of .26 to .32. The expert testified that with a .2 BAC, "the average person is very obviously intoxicated . . . [and has] trouble remembering things that they might ordinarily remember." She further testified that an average person with a .3 BAC "is passed out and moving toward a coma."

(1) That on or about 30 May 2011, at or near Baumholder, Germany, the accused unlawfully entered a room, the property of Specialist (sic) [JE]; and

(2) That the unlawful entry was made with the intent to commit therein the criminal offense of wrongful sexual contact.

"Unlawfully enter" means an unauthorized entry without the consent of any person authorized to consent to the entry and without other lawful authority. . . .

The offense of housebreaking requires an unlawful entry into a building or structure. "Building" includes a room.

## DISCUSSION

Article 66(c), UCMJ, provides that a Court of Criminal Appeals "may affirm only such findings of guilty . . . as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." In performing our duty, we must conduct a de novo review of legal and factual sufficiency. *United States v. Gilchrist*, 61 M.J. 785, 793 (Army Ct. Crim. App. 2005) (citing *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002)). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Lubasky*, 68 M.J. 260, 263 (C.A.A.F. 2010) (citations omitted). The test for factual sufficiency is "whether, after weighing the evidence of record and making allowances for not having personally observed the witnesses, [this court is] convinced of appellant's guilt beyond a reasonable doubt." *Gilchrist*, 61 M.J. at 793 (citing *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). This review for factual sufficiency "involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *Washington*, 57 M.J. at 399. As this court previously noted, "to sustain appellant's conviction, we must find that the government has proven all essential elements and, taken together as a whole, the parcels of proof credibly and coherently demonstrate that appellant is guilty beyond a reasonable doubt." *Gilchrist*, 61 M.J. at 793 (citing *United States v. Roukis*, 60 M.J. 925, 930 (Army Ct. Crim. App. 2005)).

As the military judge properly instructed the members, housebreaking in violation of Article 130, UCMJ requires: "(1) that the accused unlawfully entered a certain building or structure of a certain other person; and (2) that the unlawful entry was made with the intent to commit a criminal offense therein." *Manual for Courts-Martial*, *United States* (2008 ed.) [hereinafter *MCM*], pt. IV, ¶ 56.b. *See also United*

4

*States v. Davis*, 56 M.J. 299, 300 (C.A.A.F. 2002). "'Building' includes a *room*, shop, store, office, or apartment in a building." *MCM*, pt. IV, ¶ 56.c.(4) (emphasis added).

At issue is whether appellant's undisputed entry at 0500 hours into SGT JE's and Mrs. EE's bedroom was unlawful. A review of military housebreaking precedent fails to reveal any case on point: that is, any case where an accused is an invited guest into an apartment and is convicted of housebreaking for entering an unsecured room within that apartment, a room in which he had previously entered twice with the consent of one of the apartment's tenants and without any express limitations on his right of entry.[3]

As previously noted, housebreaking requires an unlawful entry. The fact that appellant was invited into SGT JE's and Mrs. EE's apartment is not dispositive of whether his later entry into the bedroom was lawful; rather, it is the starting point of our analysis. The element of unlawfulness, as used in housebreaking, "operates to erect a requirement of a trespassory entry." *United States v. Williams*, 4 U.S.C.M.A 241, 244, 15 C.M.R. 241, 244 (1954). "Indeed, the very term 'housebreaking' itself connotes the necessity for an initial trespass." *Id*. at 244-245, 15 C.M.R at 244-245.[4]

"'[U]nlawful entry' is not established through a showing of mere ingress with contemporaneous criminal intent," *Williams*, 4 U.S.C.M.A at 246, 15 C.M.R. at 246,

---

[3] Housebreaking is a lesser included offense of burglary and as such, case law addressing the nature of the breaking and entering required to sustain a burglary conviction provides insight into the unlawfulness of an entry necessary to sustain a housebreaking conviction. *See generally United States v. Arriaga*, 70 M.J. 51, 53 (C.A.A.F. 2011); *see also United States v. Wyatt*, 6 B.R. 385 (1935). "It is commonly understood that housebreaking is the same as burglary, except that it need not be shown: a. [t]hat the offense occurred in the nighttime[,] b. [t]hat there was a breaking[,] c. [t]hat the house was a dwelling[, and] d. [t]hat the accused intended a felony, but merely a criminal offense." *Wyatt*, 6 B.R. at 387.

[4] *See also Davis*, 56 M.J. 299 (use of lawfully acquired key to enter warehouse after duty hours for unofficial purpose and to gain entry into unauthorized area sufficient to establish unlawful entry); *United States v. Fell*, 69 B.R. 363 (1947) (accused convicted of burglary of second-floor room of building notwithstanding being granted access to the first floor); *State v. Curtis*, 424 N.W.2d 719 (Wisc. Ct. App. 1988) (upholding burglary conviction of mother's boyfriend who lived in the same house as victim when the victim's door was closed but not locked because circumstances showed entry into the victim's bedroom was not authorized); *Sandefer v. State*, 952 So.2d 281 (Miss. Ct. App. 2007) (upholding burglary conviction of defendant who broke into locked safe-room of home where he had free ingress and egress to the home but not the safe-room).

but is distinct from the second element requiring specific intent to commit a crime upon entry. *See also United States v. Doskocil*, 2 C.M.R. 802, 804 (A.F.B.R. 1952) ("evidence of intent to commit a criminal offense may not be used to prove the unlawfulness of the entry"). *But see Davis*, 56 M.J. at 303 (C.A.A.F. 2002) (citing *Williams*, 4 U.S.C.M.A at 246, 15 C.M.R. at 246):

> In *Williams*, we did indeed hold that "an 'unlawful entry' is not established through a showing of mere ingress with contemporaneous criminal intent[.]" However, we have never suggested that the factors discussed in *Williams* render intent or purpose irrelevant. To the contrary, the purpose for the entry, then as now, ostensible or otherwise, remains a relevant factor in determining whether the entry was lawful, *i.e.*, whether the entry was consistent with applicable authority or evidence of the first element of housebreaking.

In *Williams*, the accused entered the barracks of another company at night for the purpose of stealing from its occupants. In arriving at its decision, the court classified "'building[s] or structure[s]' . . . into three principal groups: (a) [t]hose which are wholly private in character; (b) [t]hose which are public; and (c) [t]hose which are semiprivate." *Williams*, 4 U.S.C.M.A at 246, 15 C.M.R. at 246. An individual's home was "regarded as archtypical of the first category—and as to it every penetration must be regarded as unlawful *in the absence of invitation, express or implied*." *Id.* (emphasis added). The barracks, on the other hand, was placed in the third category and deemed semiprivate. In assessing whether Williams had "authority [ ], permission [ ], [or] invitation" to enter the barracks, the court noted seven nonexclusive factors worthy of consideration:

> (a) the nature and function of the building involved; (b) the character, status and duties of the entrant, and even at times his identity; (c) the conditions of the entry, including time, method, ostensible purpose, and numerous other factors of frequent relevance but generally insusceptible of advance articulation; (d) the presence or absence of a directive of whatever nature seeking to limit or regulate free ingress; (e) the presence or absence of an explicit invitation to the visitor; (f) the invitational authority of any purported host; [and] (g) the presence or absence of a prior course of dealing, if any, by the entrant with the structure or its inmates, and its nature—and so on.

*Id.* at 246, 15 C.M.R. at 247. In affirming Williams' housebreaking conviction, the court took note of the absence of any "official duty . . . [drawing Williams] to the

[barracks]" and the absence of any "evidence to the effect that [Williams] was invited to enter [the barracks]." *Id.* at 246, 15 C.M.R. at 246. Nearly fifty years later, our superior court reaffirmed its earlier application of the *Williams* factors in assessing "the lawfulness of the entry into a semiprivate structure." *Davis*, 56 M.J. at 300. In affirming Senior Airman Davis' housebreaking conviction for entering a warehouse to which he had been given the key for access after hours, the court focused on: the absence of any authorization to enter the warehouse for unofficial duty; the absence of any official duty requiring Davis' entry; and the fact that Davis, a member of the Force Management section of Services Squadron, entered a section of the warehouse belonging to the lodging section, a separate, distinct, and unrelated section of the squadron.

That one may housebreak an interior room of a private residence during the same visit is without question. Although a burglary decision, the Board of Review's language and analysis in *United States v. Wyatt*, 6 B.R. 385 (1935), applies equally to housebreaking. "[T]he breaking need not be of an exterior wall or door or window, but may be a breaking by a person rightfully in the house of an interior door." *Id.* at 368–69. Had appellant entered SGT JE's and Mrs. EE's apartment uninvited and without any prior relationship to the two, this case would fall squarely in *Williams'* first category of a "wholly private" building or structure. Likewise, had appellant departed the apartment after the party only to return later uninvited, the case would be a *Williams* category one case. As such, "[absent] invitation, express or implied," appellant's entry would be unlawful. *Williams*, 4 U.S.C.M.A at 246, 15 C.M.R. at 246. However, the activities of 29–30 May 2011 call into question the applicability of the term "wholly private" to describe the apartment generally, the bedroom, and the activities of 29–30 May 2011. Considering the facts as described above, we find that notwithstanding that *Williams* dealt with semiprivate buildings and structures, the factors articulated therein are relevant in assessing whether appellant's entry into the bedroom was unlawful.

After having considered the following: the generally private nature of an apartment; that appellant was an invitee on 29–30 May 2011; that appellant twice entered the bedroom with Mrs. EE's obvious consent, albeit not expressed verbally; appellant's behavior during his second visit to the bedroom, behavior directed at an unconscious SGT JE; the unsecured nature of the bedroom; the absence of any express limitations on appellant's movements throughout SGT JE's and Mrs. EE's apartment; appellant's actions once inside the bedroom; and the *Williams* factors as applied to the facts and circumstances of appellant's case, we find appellant's conviction for housebreaking legally sufficient. However, we are ourselves not convinced, beyond a reasonable doubt, that appellant's entry into the bedroom was "unlawful." We therefore find appellant's conviction for housebreaking factually insufficient.

Having decided appellant's case on the insufficiency of evidence regarding unlawful entry, we need not discuss nor render any decision regarding whether appellant's level of intoxication on the morning of 30 May 2011 precluded him from

being able to form the specific intent to commit a wrongful sexual contact as alleged in the housebreaking charge and specification at issue.

## CONCLUSION

The findings of guilty of Charge II and its Specification and the sentence are set aside. Charge II and its Specification are dismissed. All rights, privileges, and property, of which appellant has been deprived by virtue of this decision setting aside the findings and sentence are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), and 75(a).

Senior Judge KERN concurs.

Judge MORAN, concurring in the result:

I agree with my colleagues that the evidence in support of appellant's housebreaking conviction is factually insufficient, but for a different reason. Given appellant's heavily inebriated state from excessive alcohol consumption, I am not convinced beyond a reasonable doubt that appellant intended to commit a criminal offense when he made his 0500 hours entry into the bedroom. I therefore concur in the result.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

8