# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and BORGERDING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist WILLIAM J. SCHWIN**
**United States Army, Appellant**

ARMY 20130538

Headquarters, United States Army Aviation Center of Excellence and Fort Rucker
Stephen Castlen, Military Judge
Lieutenant Colonel Patrick L. Gary, Staff Judge Advocate

For Appellant: Captain Patrick A. Crocker, JA (argued); Colonel Kevin Boyle, JA; Lieutenant Colonel Peter Kageleiry, Jr. JA; Major Vincent T. Shuler, JA; Captain Patrick A. Crocker, JA (on brief); Major Robert N. Michaels, JA; Captain Patrick A. Crocker, JA (on supplemental brief).

For Appellee: Captain Daniel H. Karna, JA (argued); Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain Daniel H. Karna, JA (on brief); Major Robert A. Rodrigues, JA; Captain Daniel H. Karna, JA (on supplemental brief).

26 June 2014

---------------------------------
OPINION OF THE COURT
---------------------------------

LIND, Senior Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of two specifications of violation of a lawful general regulation, one specification of larceny of property of a value in excess of $500.00, and one specification of housebreaking in violation of Articles 92, 121, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 921, 930 (2012) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, four months confinement, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant alleges two errors, both of which warrant discussion and relief.[1]

**FACTS**

Appellant was a military policeman at Fort Rucker, Alabama.  In 2011, he applied for and was granted membership in the Fort Rucker Skeet and Trap Club [hereinafter Skeet Club], a private organization located on Fort Rucker that provides facilities and equipment for members to shoot skeet.  Each member of the Skeet Club was given a key to the club with 24-hour access to the facilities.  All members were required to pay for use of the range and the skeet they shot.  They could also purchase ammunition, beverages, and clothing.  The Skeet Club did not have sufficient staff to be present at the range at all times.  If a member wanted to shoot skeet when no staff was present, the member would fill out a receipt accounting for the date and the amount of skeet used and would operate the skeet equipment himself.  In such cases, the member was required to place full payment with a receipt into a locked fee deposit box kept in the clubhouse.

Appellant was having financial difficulties.  To obtain additional funds, appellant began stealing from the Skeet Club fee deposit box.  From 27 January 2013 to 24 February 2013, on multiple occasions, appellant used his key to enter the Skeet Club at night when no staff were present and stole money from the fee deposit box by shaking it out of the slit where receipts and money were deposited by the members.  Skeet Club officials became aware money was missing from the fee deposit box and placed a camera to monitor the box.  On 24 February 2013, the camera captured appellant attempting to remove money from the fee deposit box.  Skeet Club officials notified Military Police Investigators (MPI) who summoned appellant to the Department of Safety at Fort Rucker where he confessed to the theft.[2]  Appellant estimated he stole a total of about $600.00 on four or five occasions over the one-month period.  The stipulation of fact stated that the Skeet Club records indicated that $1,101.00 in total was missing from the fee deposit box.

---

[1] We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they are without merit.

[2] Military Police Investigators searched appellant's barracks room and vehicle pursuant to a search authorization.  During the search, MPI discovered the privately owned weapons appellant possessed in violation of a lawful general regulation as charged in Specification 1 (wrongfully maintaining a privately owned firearm in his barracks room) and Specification 2 (wrongfully maintaining privately owned firearms in his vehicle) of Charge I.

**LAW AND ANALYSIS**

Appellant assigns two errors asserting there is a substantial basis in law and fact to question his guilty pleas to the Specification of Charge II (larceny of property of a value in excess of $500.00) and the Specification of Charge I (housebreaking).

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Schell*, 72 M.J. 339, 345 (C.A.A.F. 2013) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). A guilty plea will only be set aside if we find a substantial basis in law or fact to question the plea. *Id.* (citing *Inabinette*, 66 M.J. at 322). The court applies this "substantial basis" test by determining whether the record raises a substantial question about the factual basis of appellant's guilty plea or the law underpinning the plea. *Inabinette*, 66 M.J. at 322; *see also* UCMJ art. 45(a); Rule for Courts-Martial [hereinafter R.C.M.] 910(e); *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) ("It is an abuse of discretion for a military judge to accept a guilty plea without an adequate factual basis to support it . . . [or] if the ruling is based on an erroneous view of the law.").

*Larceny of a Value Over $500.00*

Appellant avers that the military judge abused his discretion by accepting appellant's guilty plea to the Specification of Charge II (larceny of money of a value more than $500.00 on divers occasions between 27 January 2013 and 24 February 2013) because neither the stipulation of fact nor appellant's providence inquiry established that appellant stole more than $500.00 from the fee deposit box at any one time. The government concedes the error.

This court has long held that "the record must show either that one item of the property stolen has . . . a value [of more than $500.00] or that several items taken at substantially the same time and place have such an aggregate value" for an accused to be convicted of the greater offense and subjected to a maximum punishment that includes five years of confinement. *United States v. Harding*, 61 M.J. 526, 528 (Army Ct. Crim. App. 2005) (quoting *United States v. Christensen*, 45 M.J. 617, 619 (Army Ct. Crim. App. 1997)); *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 46.c(1)(i)(ii), e(1)(d); *cf. United States v. Hines*, 73 M.J. 119, 121 (C.A.A.F. 2014) (holding that larceny and wrongful appropriation of Basic Allowance for Housing pay over several months was properly aggregated because "[t]he formulation of a plan or scheme or the setting up of a mechanism which, when put into operation, will result in the taking or diversion of sums of money on a recurring basis, will produce but one crime.") (citation omitted).

In this case, neither the providence inquiry nor the stipulation of fact established appellant stole more than $500.00 at substantially the same time and place. As such, the military judge elicited testimony only that appellant stole money

on four or five occasions over a one-month period from the Skeet Club for a combined total of approximately $600.00. Because appellant did not admit to stealing over $500.00 on any one occasion or at substantially the same time and place, the military judge failed to elicit the factual predicate necessary to find appellant guilty of the offense of larceny of a value greater than $500.00. We therefore accept the government's concession and will grant relief in our decretal paragraph.

*Housebreaking*

Appellant argues the military judge abused his discretion by accepting appellant's guilty plea to housebreaking (the Specification of Charge III) because he applied an incorrect legal principle. We agree and will grant relief in our decretal paragraph.

"Housebreaking" under Article 130, UCMJ, has two elements: (1) that appellant unlawfully entered a certain building or structure of a certain other person; and (2) that the unlawful entry was made with the intent to commit a criminal offense therein. *MCM* (2012 ed.), pt. IV, ¶ 56.b; *see also United States v. Davis*, 56 M.J. 299, 300 (C.A.A.F. 2002). "An entry is 'unlawful' if made without the consent of any person authorized to consent to entry or without other lawful authority." *Davis*, 56 M.J. at 301 (quoting *MCM* (2000 ed.), pt. IV, ¶ 111.c); *see also MCM* (2012 ed.), pt. IV, ¶ 111.c.

"'[U]nlawful entry' is not established through a showing of mere ingress with contemporaneous criminal intent . . . ." *United States v. Williams*, 4 U.S.C.M.A. 241, 246, 15 C.M.R. 241, 246 (1954). Rather, it is distinct from the second element of specific intent to commit a crime upon entry. In other words, entry into a building or structure is not per se unlawful when accompanied by a contemporaneous intention to commit a crime within that building or structure. *Id.* at 243, 15 C.M.R. at 243.

Congress intended the element of "unlawful entry" in housebreaking under Article 130, UCMJ, to require a "trespassory entry." *See id*. at 244-46, 15 C.M.R. at 244-46. Any determination of the legality of an entry depends in part on the nature of the building or structure involved. *Id.* at 246, 15 C.M.R. at 246. *Williams* classified buildings or structures into three groups: private, public, and semiprivate. *Id.* For wholly private buildings or structures, such as one's home, "every penetration is unlawful in the absence of invitation, express or implied." *Id.* For public buildings or structures like a post-office which is typically not locked, "all unobstructed incursions must be regarded as licit—that is, as authorized—in the absence of a clear direction to the contrary." *Id.* Semiprivate buildings and structures present "a more complicated problem, and one in which the line between the welcome and the unwelcome visitor is more difficult to draw." *Id.*

4

In *Davis*, our superior court affirmed that the framework set forth in *Williams* "remains our benchmark for analysis of the lawfulness of the entry into a semiprivate structure . . . ." 56 M.J. at 300 (citing *Williams*, 4 U.S.C.M.A. 241, 15 C.M.R. 241). The court reiterated that "'the lawfulness of an entry for . . . [these] purposes depends on authorization, negative or positive, express or implied' and must be determined based on the circumstances in each case." *Id.* at 301 (quoting *Williams*, 4 U.S.C.M.A. at 247, 15 C.M.R. at 247) (alteration in original).

Factors relevant to this question with regard to semiprivate structures include:

(a) the nature and function of the building involved;

(b) the character, status, and duties of the entrant, and even at times his identity;

(c) the conditions of the entry, including time, method, ostensible purpose, and numerous other factors of frequent relevance but generally insusceptible of advance articulation;

(d) the presence or absence of a directive of whatever nature seeking to limit or regulate free ingress;

(e) the presence or absence of an explicit invitation to the visitor;

(f) the invitational authority of any purported host; and

(g) the presence or absence of a prior course of dealing, if any, by the entrant with the structure or its inmates, and its nature.

*Id.* (quoting *Williams*, 4 U.S.C.M.A. at 247, 15 C.M.R. at 247). The court "avoided any suggestion that the list was exhaustive and indicated that 'no one of . . . [these factors] will necessarily control or even maintain relevance, in all cases.'" *Id.* (quoting *Williams*, 4 U.S.C.M.A. at 247, 15 C.M.R. at 247) (alteration in original).

We note that *Davis* suggests an increased relevance to an accused's purpose or intent upon entry to the question of trespass, however, this increased relevance appears to be limited to those situations involving military duties and places where the authority to enter is defined by official military duty. *See id.* at 301-03. The court in *Davis* nonetheless recognized that the totality of the circumstances, to include the *Williams* factors for semiprivate structures, must always be considered in each case when determining whether an unlawful entry occurred. *See id.* at 302-03 ("[W]e have never suggested that the *factors* discussed in *Williams* render intent or

purpose irrelevant. To the contrary, the purpose for the entry, then as now, ostensible or otherwise, remains a relevant *factor* in determining whether the entry was unlawful . . . .") (emphasis added). This comports with *Williams* and maintains the fundamental legal question to be answered: absent the offense committed therein, was the accused trespassing? *See Williams*, 4 U.S.C.M.A. at 247; 15 C.M.R. at 247 ("[T]he lawfulness of an entry for present purposes depends on authorization, negative or positive, express or implied . . . . Illegality of the original penetration is an element of the offense with which we are dealing. It must be alleged. It must be the subject of instruction . . . . And it must be found.") (internal citations omitted).

Turning to the facts of this case, with respect to appellant, the Skeet Club is a semiprivate structure.[3] The stipulation of fact and the providence inquiry show that appellant was authorized to access the Skeet Club with his key, 24 hours a day, without limitation.

The military judge asked trial counsel what the government's theory was "on this being an unlawful entry." Trial counsel, relying on *Davis*, stated that:

> [I]t's an unlawful entry because of [appellant's] intent. He went in on this occasion . . . used his key, though it was issued--with the sole intent of committing a crime . . . [which] does constitute housebreaking. Though he had lawful access, the fact that he used his lawful access . . . to gain access for unlawful purposes constitutes housebreaking.

After further colloquy with appellant and counsel, the military judge asked defense counsel: "And . . . the factors that are listed in *United States v. Davis* . . . when you consider all [of] those factors, is it the defense's position that this factual scenario described by [appellant] constitutes housebreaking? And I'm asking that because that's what you're pleading guilty to." After conferring with appellant, defense counsel replied: "[appellant's] position is that he believed he had authority to enter that building at any time, but he didn't have the authority to enter the building at any time to steal."

The military judge then made the following findings of fact and conclusions of law:

> Well, the Court finds that based upon the colloquy the Court had with [appellant], that the function of the building was multi-purpose, to include recreational, to include security, to include storage and other things; that

---

[3] Having membership open to the public, the Skeet Club is not so private as a person's home, yet not so public as a grocery store, for example.

> the building was entered at a time no one else was around, later in the evening when perhaps shooting may not be going on. [Appellant] did not have permission to enter the building for an illegal purpose, and certainly did not have permission to enter the building to perpetrate a theft once inside. So for the purpose of considering whether or not the factual scenario meets the criteria for housebreaking, the Court accepts the conclusions of counsel and [appellant] that this does constitute housebreaking.

"The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care*, 18 U.S.C.M.A. 535, 538-39, 40 C.M.R. 247, 250-51 (1969)). An accused must understand "the nature of the charges brought against him . . . ." *Id.* This is due to the fact that "an accused has a right to know to what offense and under what legal theory he or she is pleading guilty." *Id.* "An essential aspect of [accurately] informing [a]ppellant of the nature of the offense is a correct definition of legal concepts. The judge's failure to do so may render the plea improvident." *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004).

The facts that appellant entered the building late in the evening, when few people were around, and no shooting was occurring, are factors that go towards appellant's intent to steal, not to the lawfulness of the entry. It is clear from the colloquy between the military judge, counsel, and appellant during the providence inquiry, and from the stipulation of fact, that all parties to the trial were erroneously relying solely on the purpose, or criminal intent, appellant had when entering the Skeet Club to find the entry "unlawful."[4]

---

[4] The government on appeal argues an alternative factual theory of unlawful entry: that the photographs attached to the stipulation of fact show the fee deposit box was located in a separate room or closet in the Skeet Club, and it is appellant's entry of that room or closet, rather than the Skeet Club itself, that constitutes the unlawful entry. We reject this theory because there is no evidence in the record that appellant unlawfully entered this room or closet. In fact, both the stipulation of fact and the providence inquiry established that members were required to deposit money into the safety deposit box if they used the facilities when the staff was not present, and the record contained no limitations precluding members from accessing the room, closet, or the box. Additionally, there is no indication in the record that appellant pleaded guilty to housebreaking on the factual circumstances of entering this separate room or closet within the Skeet Club.

After a thorough review of the record, we find no factual basis to establish appellant unlawfully entered the Skeet Club. Considering the *Williams* factors, the record establishes: (1) the Skeet Club is semiprivate with respect to appellant; (2) appellant was a member of the Skeet Club with a key and had 24-hour access to the club and its facilities; (3) there were no express or implied conditions on appellant's entry into the Skeet Club; his ostensible purpose for entry was to enjoy the facilities as he was unconditionally invited to do; (4) there was no directive seeking to limit or regulate free ingress; (5) appellant had an express invitation to enter the Skeet Club 24 hours a day by using the key given to him by the Skeet Club; (6) Skeet Club management had authority to give appellant his membership, key, and 24-hour access to the Skeet Club; and (7) there was no prior course of dealing by appellant with respect to entry of the Skeet Club or its facilities that would suggest a limit to his access to the facilities.

Turning to the fundamental legal question to be answered: absent the offense committed therein, was appellant's entry unlawful—that is, did he trespass? In this case, appellant did not trespass when he entered the club. If appellant had not committed larceny, his entry, presence, and activities in the Skeet Club were authorized, permitted, and invited. *See Williams*, 4 U.S.C.M.A. at 246, 15 C.M.R. at 246 ("[W]e must grapple with the question of authority, of permission, of invitation—call it what we may."). Appellant is not guilty of housebreaking, but certainly guilty of larceny.

We hold the military judge abused his discretion in accepting appellant's plea to housebreaking: the judge's ruling was based on an erroneous view of the law, and the record contains no factual circumstances to establish appellant unlawfully entered the Skeet Club. We therefore find a substantial basis in both law and fact to question appellant's plea of guilty to the Specification of Charge III.

## CONCLUSION

The findings of guilty of Charge III and its Specification are set aside and dismissed. We affirm only so much of Charge II and its specification as provides:

> In that Specialist (SPC) William J. Schwin, U.S. Army, did, at or near Fort Rucker, Alabama, on divers occasions between on or about 27 January 2013 and 24 February 2014, steal money, of a value of $500.00 or less, the property of the Fort Rucker Skeet Club.

The remaining findings of guilty are AFFIRMED.

Reassessing the sentence on the basis of the errors noted, the entire record, and applying the principles of *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and the factors set forth in *United States v. Winckelmann*, 73 M.J. 11, 15-16

(C.A.A.F. 2013), we are confident the military judge would have adjudged at least a bad-conduct discharge, three months confinement, and reduction to the grade of E-1.

There is no dramatic change in the penalty landscape or exposure. *See Winckelmann*, 73 M.J. at 15-16. While appellant's theoretical maximum sentence to confinement is reduced from fourteen years to four years and six months, appellant was tried at a special court-martial where the sentence to confinement was limited to one year. *See MCM* (2012 ed.), pt. IV, ¶¶ 46.e(1)(b), (d), 56.e; UCMJ art. 19; R.C.M. 201(f)(2)(B). Although as a result of our decision we set aside the housebreaking charge and affirm a larceny of a value of $500.00 or less, the gravamen of the offenses and the aggravating circumstances have not changed significantly. *See Winckelmann*, 73 M.J. at 16. The total amount stolen by appellant remains the same. The *res gestae* of the larceny offenses demonstrates the aggravating conduct of appellant manipulating his lawful access to the Skeet Club to steal from the Club on multiple occasions. Because appellant was tried by a judge alone, we are more confident of the sentence the military judge would have imposed for the remaining offenses. *See id.* Finally, this court reviews the records of a substantial number of courts-martial involving larcenies and violations of general regulations, and we have extensive experience with the level of sentences imposed for such offenses under various circumstances. *See id.*

The court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for three months, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision, are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), and 75(a).

Judge KRAUSS and Judge BORGERDING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court